WILLIAMS y. BENET.

1. STOCK SUBSCRIPTIONS.—One who authorizes his name to be signed as a subscriber to shares in the capital stock of a corporation cannot avoid liability on his unpaid subscription by showing an agreement between himself and his debtor, unknown to the corporation, binding the debtor to make all the payments.
2. IBID.—ISSUES FOR THE JURY.—Where defendant's name is signed to a stock subscription list, but he denies having signed it, or authorized the signing, or that he subsequently ratified it, the questions raised in his defence are the issues in the cause to be submitted to the jury.

Before ALDRICH, J., Abbeville, March, 1890.

At the hearing of this appeal, Hon. W. H. Wallace, Judge of the Seventh Circuit, sat in the place of Mr. Justice McGowan, who was disqualified by reason of his relation by marriage to the defendant. It was an action by James T. Williams and Charles Z. McCord, as receivers of the Georgia Construction and Investment Company, against W. C. Benet, to recover unpaid instalments of stock subscription. In support of the defence stated in the opinion, defendant testified that he had never subscribed to the capital stock of the corporation, but that the subscription had been made in his name by Susong & Co., who were to make all the payments, and that he voted stock at a stockholders' meeting on information that Susong & Co. had subscribed fifty shares for him.

After instructing the jury generally as to corporations, and subscriptions to stock, and the appointment of receivers, the judge continued his charge as follows:

That disposes of the preliminary questions and brings us down to the particular case which we are now trying, to wit: Was Mr. Benet a stockholder; was he and is he a shareholder in the Georgia Construction and Investment Company, and does he owe a balance of $3,500 of stock for which he subscribed? I have explained to you the various methods by which a corporation is organized, and the law applicable thereto. I would further instruct you that ordinarily a party when he desires to become a stockholder usually subscribes a paper in which he becomes a subscriber to a certain number of shares of stock. That is the ordinary and usual method pursued. When he subscribes himself, he makes an offer to take from the corporation so many shares of stock, and when the corporation accepts it, then the contract has become complete. There has been the drawing together of the minds—the meeting of the minds—and the liability is fixed.

But that is not the only method by which a party can subscribe to stock. He may act by his authorized agent, and if the agent did subscribe, the action of the agent would bind the principal, for the maxim of the law is that he who does by another does by himself. Again, a stranger may come in and put down the

8—34

name of a party upon a subscription list.    Now, just there, there would be no mutuality, that coming together of the minds of the subscriber and the party with whom he is contracting, which is necessary to make a contract, and if nothing else appeared, the party could not be held liable.    Why ?    Because the party who put his name there acted without authority and without right, and had neither authority nor right to bind the defendant in such a transaction.

But if in the first instance the stranger or the third party who placed the name of an individual there to subscribe, did do it without authority or without license, and it comes to the knowledge of the individual what this third person had done, then he may pay no attention to it, disregard it.    Just here I would state my view of the law.    A man is not bound to repudiate the meddling of a third person with his affairs in order to relieve himself of liability.    He is not bound to repudiate, he may remain quiet; but if he has discovered that the third person has done this thing, and he goes further and adopts the action of the third person, and knows it and adopts it, then he is as much bound by the acts of that third person as if he had done it in the first place himself. Because a party may adopt and ratify the acts of a third party, and if he does, that creates the contract.    And I would further charge you that if a third party who signs his name for a party without his knowledge or consent, and signs his name to stock, and goes forward and pays his stock, one, two, or three instalments, then that does not bind the individual, unless he desires to be bound by it, and shows that desire by ratifying and confirming it.

Now I have given you generally the legal aspect of this case, so far as I can judge that the law is applicable to it.    I cannot help you as to these facts, because it is out of my province.    It is my duty to give you the law.    I am responsible for that law, and it is your duty to ascertain what the facts are, and then apply the law as given you by the court to the facts and then reach your conclusion—find your verdict.

The following requests were made by plaintiffs and charged by the presiding judge:

First.    "That the capital stock of an insolvent corporation, in-

cluding unpaid subscription, is a trust fund for the benefit of its creditors; it is a basis of the credit extended to it by creditors, and they are presumed to have trusted as well to the unpaid subscriptions as to those actually paid in.

2. "That the plaintiffs, as receivers, have the right to sue for any unpaid subscriptions for the benefit of the creditors.

3. "That if the defendant subscribed, either in person or by agent, to the capital stock of the Construction Company, he is liable for any unpaid balance upon such subscription.

4. "That if the defendant authorized Susong & Co. to subscribe for him and in his name, for fifty shares of stock in the said Construction Company, and they did so, then the defendant is liable for any unpaid balance.

5. "That if Susong & Co. made a subscription to the capital stock of the said company in the name of the defendant and with his knowledge and consent, then in that transaction they acted as the agents of the defendant, and he is bound.

6. "That if the defendant had an agreement with Susong & Co. to subscribe for fifty shares of stock in said company in his name and pay for the same for him, in settlement of a fee they owed him, then the subscription would bind the defendant, and the arrangement between him and Susong & Co. was personal between them and in no way would bind the company or its creditors." That I charge you, because it is a familiar principle of law, that if A goes security for B, and B says to A, If you have to pay the money, I will pay you back the money; that does not relieve him of his liability. So if you find that there was a contract between Susong & Co. and Mr. Benet, by which Susong & Co. was to pay that stock, and if you further find that Mr. Benet agreed for them to put that stock in his name, then any failure on the part of Susong & Co. to carry out a personal contract between them (Susong & Co.) with Mr. Benet would be a failure of the personal contract, with which the company had nothing to do.

8. "That if the defendant was a subscriber to the stock of the said company, he cannot be discharged from liability, except by the payment of money or its equivalent.

9. "That if defendant was a stockholder, any agreement the

defendant may have had with Susong & Co., by which they engaged to pay for the defendant's stock would not relieve the defendant from liability to pay the amount of his subscription, even though such agreement was known to and acquiesced in by the officers of the company—it would be beyond their power.

10. "That any agreement which may have been made between the defendant and the Construction Company, by which it was agreed that he should not be liable for the payment of his stock would be a fraud upon the creditors of the said corporation, who trusted to its capital stock, and such agreement, if made, would be no defence to the action.

11. "That even if the stockholders of the Construction Company agreed that the defendant should not be liable for his stock, yet he would be still liable if this agreement was unknown to those who subsequently gave credit to capital stock of said company, and the burden is upon the defendant to prove that they all had notice of such agreement."

Judgment was for plaintiffs, and defendant appealed on the following grounds:

I. Because his honor erred in sustaining the demurrer of plaintiffs' counsel to defendant's answer by striking out the first and second paragraphs of the special defence, on the ground that they did not contain facts sufficient to constitute any defence to the plaintiffs' complaint.

II. Because his honor erred in charging plaintiffs' fourth request as follows: "That if the defendant authorized Susong & Co. to subscribe for him and in his name for fifty shares of stock in said Construction Company and they did so, then the defendant is liable for any unpaid balance."

III. Because his honor erred in charging plaintiffs' fifth request as follows: "That if Susong & Co. made a subscription to the said capital stock of the said company in the name of the defendant, and with his knowledge and consent, then in that transaction they acted as the agents of the defendant and he is bound."

IV. Because his honor erred in charging plaintiffs' sixth request, as follows: "That if the defendant had an agreement with Susong & Co. to subscribe for fifty shares of stock in said com-

pany in his name, and pay for same for him in settlement of a fee they owed him, then the subscription would bind the defendant, and the arrangement between him and Susong & Co. was personal between them, and in no way would bind the company or the creditors."

V. Because his honor erred in saying to the jury at the end of the above request, "That I charge you, because it is a familiar principle of law that if A goes security for B, and B says to A, If you have to pay the money, I will pay you back the money, that does not relieve him of his liability."

VI. Because his honor erred in charging the ninth request of the plaintiffs, as follows: "That if defendant was a stockholder, any agreement which the defendant may have had with Susong & Co., by which they engaged to pay for the defendant's stock, would not relieve the defendant from liability to pay the amount of his subscription, even though such agreement was known to and acquiesced in by the officers of the company—it would be beyond their power."

VII. Because his honor erred in charging the plaintiffs' tenth request, as follows: "That any agreement which may have been made between the defendant and the Construction Company by which it was agreed that he should not be liable for the payment of his stock would be a fraud upon the creditors of the said corporation who trusted to its capital stock, and such agreement, if made, would be no defence to this action."

VIII. Because his honor erred in charging the plaintiffs' eleventh request, as follows: "That even if the stockholders of the Construction Company agreed that the defendant should not be liable, yet he would still be liable, if this agreement was unknown to those who subsequently gave credit to the capital stock of said company, and the burden is upon the defendant to prove that they all had notice of such agreement."

*Messrs. S. C. Cason* and *Parker & McGowan*, for appellant.

*Messrs. Westmoreland & Haynsworth*, contra.

April 23, 1891. The opinion of the court was delivered by

MR. JUSTICE WALLACE. This is an action at law brought to recover an unpaid balance of a subscription to the capital stock of the Georgia Construction and Investment Company. The defendant denies that he subscribed to the stock or paid any instalment thereon, and sets up a special defence, to wit: "1st. That the defendant was the attorney and counsellor of Susong & Co. prior to the organization of the Georgia Construction and Investment Company, who were the contractors and had the control of the Atlantic, Western & Knoxville Railway Co., and as such attorney rendered valuable services. 2nd. That a majority of the members of the last mentioned company became members of the Georgia Construction and Investment Company and held a controlling interest therein, and upon its organization the said Susong & Co., in payment of his services as attorney, was to deliver to the defendant fifty shares of the par value of one hundred dollars each of the Georgia Construction and Investment Company. 3rd. That it was not intended and there was no agreement on the part of the defendant that he should pay any part of the said sum of five thousand dollars, and the amount paid in, to wit, fifteen hundred dollars, was paid by the said Susong & Co., in part performance of their contract with defendant, and not by the defendant. 4th. That defendant had nothing whatever to do with subscribing to the stock of said company, and he did not attend its meetings as a stockholder, but as attorney; and he denies that he is liable for any balance on the stock, but avers that the whole of the fifty shares has been paid for, so far as this defendant is concerned, by services rendered as aforesaid."

The issues came on to be heard before a jury, and the plaintiff put in evidence tending to show that defendant had acted as a stockholder, claiming to hold fifty shares; had been appointed and acted as a director of the company from the date of his appointment up to the appointment of the receivers, who are plaintiffs here. As further tending to show that defendant recognized his liability as a subscriber, plaintiff put in evidence the two following letters, written in answer to a demand by the company of payment of instalments for shares held by him:

"DEAR MR. SIBLEY: Repeated and prolonged absence from home must excuse any seeming negligence in the matter of the

instalments you call for.   Another thing, there was a little mis-
understanding about the payment of it between Mr. Susong and
myself, which is all cleared up now.   All my dues will be paid
up by the middle of this month, which Mr. Susong said would be
soon enough.

"Yours truly,

"(Signed)              W. C. BENET."

"DEAR MR. SIBLEY: Your letter came during my absence
from home, and it was forwarded to me with others to Sumter
the very day I left Sumter, and then I did not receive it for
nearly two weeks.   I will try at once to arrange about my instal-
ments.   I must see Mr. Susong first, and will do so at my ear-
liest leisure.

"Yours truly,

"(Signed)              W. C. BENET."

After plaintiff closed his case, defendant offered to prove the
allegations of his special defence copied above.   Plaintiff object-
ed and moved to strike out the special defence as not stating facts
sufficient to constitute a defence.   The presiding judge, Judge
Aldrich, granted the motion in so far as it related to the defences
numbered 1 and 2, and this ruling is the first ground of appeal.
There is no question but that a contract such as is set out in the
special defence was made between defendant and Susong
& Co., but there is nothing in the record tending to show
that the Georgia Construction and Investment Company
was a party to it, or assented to it or knew of it.   Its existence,
therefore, could not alter the relation between the latter company
and its stockholders, or affect the rights that arose from that rela-
tion.   If defendant's name was upon the stock list with his consent,
*prima facie* he was bound to pay for the shares, and that liability
was not discharged by a private agreement between himself and
Susong & Co. that the latter would pay for them.   The presiding
judge, therefore, did not commit error in ruling that proof of the
contract—set up in the special defence—was irrelevant to the
issue, or by granting the motion to strike out paragraphs 1 and 2.

The remaining grounds of appeal all relate to the charge of
Judge Aldrich to the jury.   The second and third grounds were
not argued at the hearing.   They merely state the principle that

if defendant authorized Susong & Co. to subscribe for stock for him, or if Susong & Co. made such subscription with his consent, in either case Susong & Co. would be his agents and he would be bound.

With respect to the remaining grounds of appeal, it may be said that there certainly was a subscription to the stock of the company in the name of defendant, and the issue was whether he had originally authorized or subsequently approved and adopted it, and the parts of the charge excepted to confine the jury to the trial of that issue. In this there was no error.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.