16416

BAKER v. MUTUAL LOAN & INVESTMENT CO.

GARY v. COTTER

GARY v. COATES

(61 S. E. (2d) 387)

48

Mr. *Richard E. Broome,* of Columbia, *for Appellants,*

Mr. *Thomas H. Pope,* of Newberry, *for Respondent,*

October 6, 1950.

FISHBURNE, Justice.

The respondent, Frank B. Gary, Jr., as receiver of Mutual Loan and Investment Company, an insolvent corporation, instituted separate actions for the benefit of creditors and stockholders of the defendant company, to recover unpaid stock subscriptions in the amount of $400.00 from the appellant, J. P. Coates, and in the sum of $1,000.00 from the appellant, L. A. Cotter.

Appellants (defendants below) answered and denied the material allegations of the complaint and thereafter by agreement the actions were consolidated and referred to the master. He heard the testimony offered by the parties and made his report to the court. He found that there was no definite and legal binding offer to purchase the stock of the Mutual Loan and Investment Company by Coates or Cotter; and recommended that the complaints be dismissed. Upon exceptions being taken to the circuit court, the master's report was set aside. New findings were made by the court, and a decree rendered, wherein it was adjudged that appellants, under the evidence, subscribed to the stock of the defunct corporation in the amounts alleged in the complaint, for which they failed to pay. It was further held that they are

estopped by their conduct, as directors and officers of the corporation, to question the amounts adjudged to be due by them on their stock subscriptions. Judgment was awarded against them with interest.

It is first argued on behalf of the appellants that the court erred in holding that they had ever made any valid subscription for the purchase of stock of the insolvent corporation.

It appears from the record that Mutual Loan and Investment Company, with its principal place of business in the city of Columbia, was organized in 1939. The officers and directors consisted of men more or less prominent in their various business lines, but entirely inept and inexperienced in handling the affairs of a corporation. This company was created to make loans, and the directors, including the appellants Coates and Cotter, who were charged with the duty of looking after the business of the corporation, employed Mr. J. F. Beall. now deceased, as full time manager. A secretary was also employed who performed his duties under the direction of Beall. In addition to supervising the affairs of the company, Beall sold stock of the corporation on a commission basis. He conducted this stock selling agency under the name of Mutual Investment Company and turned over to the secretary, who also acted as treasurer, the proceeds from the sales of stock made by him.

We will first deal with the evidence which respondent relies upon to charge appellant Coates with liability. The Mutual Loan and Investment Company appears to have kept no stock book record. The only record consisted of stock subscription cards, 26 of which were introduced in evidence. It appears from these cards that permanent entries were made thereon for subscriptions to stock either in ink or by typewriter, but none were signed by the subscribers. On the subscription card of the appellant, Coates, his name appears on the face of the card typewritten, with certain pen and ink entries showing that he had subscribed and paid for stock in the amount of $800.00. On the back of the card in

lead pencil, there appears this notation: "12-15-41 * * * subscription * * * $500.00." The testimony shows that this entry is in the handwriting of Mr. Beall. Beneath this quoted entry, in pen and ink, there is a notation showing payment of $100.00, and a balance due of $400.00 on the supposed subscription. The secretary, Mr. Gibson, says that the pen and ink entry is in his handwriting, and that he was instructed by Mr. Beall to make the notation.

It is upon the foregoing card and the entry made on the back in lead pencil, containing the credit of $100.00, that the respondent mainly relies to prove the liability of Coates for the sum of $400.00 alleged to be due and unpaid.

It is admitted that Coates owned stock in the company for which he subscribed and for which he paid before this question with reference to additional stock ever arose. He testified that Beall approached him to buy an additional amount of stock in the sum of $500.00, but he told Beall that he did not have the money, and upon being asked by Beall how much could he take, he told him that he would buy $100.00 worth and give his note for this amount. Coates stated that he advised Beall that when the note was paid, and if able to do so at that time, he would purchase $400.00 more of stock. Coates testified without qualification, that he did not purchase or agree to purchase additional stock in the sum of $500.00; that he gave his note for $100.00, and when it fell due six months later, he paid it; and that he knew nothing of any claimed indebtedness due by him to the company of any unpaid subscription for stock until notified by the receiver after the Mutual Loan and Investment Company became insolvent in 1947. The note introduced in evidence was stamped paid Nov. 2, 1942. He further testified that he had never seen the stock subscription card with the lead pencil notation on the back, made by Beall, until it was introduced in evidence in this case.

The master found that the notation in lead pencil on the back of the stock subscription card of Coates was a mere

temporary entry which was unauthorized, and which was never ratified in any manner by Coates. None of the other stock subscription cards introduced in evidence contained on the reverse side any lead pencil notation except those of Coates and Cotter, the appellants, and one other which is not pertinent here.

Counsel for appellant, Coates, argues that if Coates had really subscribed for additional stock in the sum of $500.00, he would have given his note for that amount, but that, as testified to by him, he subscribed for only $100.00 in addition to the stock he already owned, gave his note for that amount, and when it matured he paid it.

The original stock subscription card of appellant, Cotter, was lost or misplaced, but the evidence reflects the pertinent entries made on the reverse side. Cotter's card like that of Coates, contained the permanent entry on its face, with his name typewritten thereon, and the amount of stock which he owned and paid for. It is admitted, as in the case of Coates, that Cotter owned stock in the company before this question of additional stock ever arose. It was stated that on the back of the card in lead pencil there appeared this notation: "12-15-41, subscription $1,000.00." The date here is the same as that on the Coates card, in the handwriting of Beall. Cotter testifying, stated that Mr. Beall came to him and asked him to buy additional stock in the company in the sum of $1,000.00, and Cotter said: "I told him at the time that I didn't have the money to pay for it, and when I had $1,000.00 which I could use for that purpose I would be glad to buy an additional $1,000.00 worth of stock." Mr. Cotter testified that he heard nothing further from Beall or anyone else concerning this supposed purchase of additional stock, and was never approached by anyone for payment. The master found that the entry made by Beall in lead pencil on the reverse side of the Cotter card was temporary and did not indicate any definite contract to purchase. Cotter, like Coates, stated that he had never seen any card and knew nothing

of one until testimony bearing upon the question was introduced upon the hearing before the master.

As is well said in 13 Am. Jur., Sec. 224, Page 331: "A tentative subscription to stock which is not final, but which contemplates an act to be done in the future by the subscriber to make the subscription binding, is, of course, unenforceable as a contract." Annotation, 136 Am. St. Rep., 746; and see *Williams v. Benet,* 34 S. C. 112, 13 S. E. 97.

To constitute one a subscriber, he must subscribe himself, authorize someone to subscribe for him, or afterward ratify the unauthorized subscription made in his name. Annotation, 3 Am. St. Rep., 829.

The usual rule applicable to the formation of contracts generally govern the formation and validity of a stock subscription or a contract to purchase stock from a corporation. 18 C. J. S., Corporations, § 294, Page 777. And the principles of evidence applicable in civil actions generally are applicable to an action by a corporation or its receiver to enforce the liabilities of a subscriber to its corporate stock. The burden of proof is upon the party who by the pleadings has the affirmative on the issue. The corporation must prove all facts in issue which are essential to its right to enforce the subscription agreement against the defendant. 13 Am. Jur., Sec. 295, Page 381.

To determine the question whether any person has entered into a valid contract of subscription, the question of intent becomes of essential importance. In this case we have two alleged parol subscriptions, and we find no substantial evidence in the record contradicting the testimony of appellants Coates and Cotter, that they made no binding contract to purchase the stock alleged in the complaint. The only evidence which can be argued to the contrary is the lead pencil notation made on the reverse side of the original stock subscription cards applicable to the appellants. These lead pencil

entries, as hereinabove pointed out, are exceptional, and to a large extent inexplicable, unless as found by the master, they wre mere temporary entries subject to erasure, it being doubtful whether the parties would take the stock or not.

We are constrained to hold that there was no definite legal and binding offer to purchase this additional stock on the part of the appellants Coates and Cotter. The respondent contends, however, that under the facts in this case, the appellants are estopped to deny their liability to the corporation. Soon after the Mutual Loan and Investment Company was organized, both appellants, Coates and Cotter, subscribed and paid for stock which was issued to them. This stock, of course, has nothing to do with the additional stock for which they are being sued. Both appellants were elected directors, and continued as such until the corporation was placed in receivership in 1947; and with some intermissions, Cotter served as president; and during a part of the time Coates served as vice president of the corporation.

It is undisputed that annual audits of the corporation's books were made by a certified public accountant; and it is shown that for the years 1942, 1943, 1944, and 1945 these annual audits carried as asserts of the corporation unpaid stock subscriptions amounting to $5,239.00.

On April 19, 1943, the corporation sent a special letter to stockholders to which was attached a financial report compiled by the accountant which included as assets "unpaid subscriptions to capital stock, $5,294.00."

Both appellants testified that although officers of the corporation, they seldom visited its place of business. and never made any examination of the records to ascertain who owed these unpaid subscriptions; and, as before stated, had never seen the stock subscription cards. It seems to be an admitted fact that all details connected with the operation of the corporation's business were left to Mr. Beall. Coates testified

that once or twice he inquired of Beall about the condition of the loans made by the company.

It is contended by respondent that the conclusion is inescapable that appellants knew or should have known that the unpaid stock subscriptions shown in the audits were based upon the stock subscription cards in the files of the corporation; and that appellants should have known who owed the company for unpaid stock subscriptions, and should have known that their indebtedness for additional stock sold to them by Beall was included as assets in the financial report compiled by their accountant.

■ Ordinarily, to constitute estoppel, there must be conduct, acts, language or silence amounting to a representation or concealment of facts, and the party claiming the estoppel must have acted upon it, and thereby changed his position for the worse. *Cannon v. Baker,* 97 S. C. 116, 81 S. E. 478.

■ It is essential to the determination of equitable estoppel that the party sought to be estopped, should have knowledge of the facts or have been in such a position that he ought to have known them. However, a party is not estopped by excusable ignorance of a material fact. It is not clear from the record that there are any creditors nor, except through inference, that anyone was misled to his injury.

The only reasonable inference to be drawn from the testimony is that the appellants had no knowledge whatever that on the reverse side of the stock subscription cards, there was a lead pencil entry indicating that they had subscribed for additional stock. These cards were in the filing records kept by the corporation, and there is no evidence that the appellants ever saw them. In fact they stated that they knew nothing of them until the hearing before the master.

Audits were made annually and a statement was mailed to all stockholders, showing the total amount of unpaid stock

subscriptions; and as a matter of mathematics the amounts claimed to be owed by appellants were included in the total of unpaid stock subscriptions.

We think under the circumstances that the appellants, knowing that they had subscribed for no additional stock, should not be estopped because they accepted without question the auditor's report,—which was not itemized,—showing the total due the corporation for unpaid subscriptions. They had no reason so far as the record shows to question the report made by the auditor, and in our opinion should not be held liable for their failure to examine into and verify everything appearing in the auditor's report.

For the reasons stated, we think the judgment should be reversed.

Judgment reversed.

STUKES, TAYLOR and OXNER, JJ., and L. D. LIDE, Acting Associate Justice, concur.

BAKER, C. J., not participating.