2287

FRIARSGATE, INCORPORATED and Whitehall Developers, Inc., Appellants v. FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF SOUTH CAROLINA, American Federal Bank, FSB, and James E. Knight, Jr., of whom First Federal Savings and Loan Association of South Carolina and American Federal Bank, FSB, are Respondents.

(454 S.E (2d) 901)

Court of Appeals

*Charles F. Cooper II* of *Cooper, Coffas & Megna,* Colum-bia, *for appellants.*

*Debra R.J. Shupe, Leonard R. Jordan, Jr.,* and *Louis H. Lang* and *Suzanne A. Hawkins,* Columbia, *for respondents.*

Heard Oct 15, 1994; Decided Jan. 9, 1995.

Reh. Den. March 16, 1995.

SHAW, Judge:

Friarsgate, Incorporated and Whitehall Developers, Inc. (the sellers) appeal from an order of the master in equity declaring that mortgage liens held by First Federal Savings and Loan Association of South Carolina and American Federal Bank, FSB, (the lenders) were entitled to first priority over mortgage liens held by the sellers in property the sellers sold to J.C. Roy Company, Inc. (Roy), a real estate developer. We reverse.

The facts of this case are largely undisputed. Over a period of time, the sellers entered into seven contracts for the sale of seven lots to the J.C. Roy Company, Inc. In each transaction, a standard "Builder Lot Contract" was used which provided in pertinent part as follows:

> 2. *Price and Terms.* The purchase price is $\_\_\_\_. The Seller acknowledges receipt of an earnest money deposit of $\_\_\_\_, to be held by the Seller until closing, with the remainder to be (select one):
>
> /\_\_/ Paid at closing ($     ).
>
> /\_\_/ Paid, with interest at [rate]%, ON DEMAND, after closing, as evidenced by a demand negotiable promissory note, guaranteed personally by _____ and secured by a first lien purchase money mortgage of said lot. Seller may subordinate this mortgage to construction financing upon the payment of $_____ to Seller to be applied against the purchase price and if the total amount secured by said lot does not exceed 75% of the fair market value of the lot and improvements.

Roy chose the second option for each lot and chose to have the sellers finance part of the purchase price.

The lenders made construction loans to Roy to build houses on the lots purchased from the sellers. The closings on the sale of the lots and on the construction loans occurred simultane-

ously and were handled by attorney James Knight, who represented the construction lenders in these transactions. The deeds, purchase money notes and mortgages were transmitted to Knight for the closing by the sellers' attorney by letter.[1]

At the closings, Roy paid the amount required in the contracts and gave a note and mortgage to the sellers for the balance due them. Roy also obtained a construction loan from the lenders for each lot and executed a note and a mortgage to secure the loan. Knight recorded the deeds and mortgages for each transaction. Each time, he recorded the lenders' mortgage approximately one minute prior to recording the sellers' mortgage.

Roy subsequently declared bankruptcy. All of the real property securing the indebtedness in this case has been sold, and the parties asked the court to direct disposition of the proceeds in accordance with its determination of the mortgage lien priorities.

The sellers brought this declaratory judgment action seeking an order declaring their mortgages to have priority over those of the lenders. The matter was referred to the master in equity for final judgment, with any appeal directly to the Supreme Court.

---

[1] The letter, received by Knight in at least three of the transactions, reads in applicable part as follows:

> To: closing attorney for the lot indicated below
> Re: [lot number; block number]
> Purchaser: J.C. Roy Company, Inc.
> Purchase money note and mortgage of [dollar amount]
> To Friarsgate Incorporated (seller)
> Dear Closing Attorney:
> Enclosed in strict trust to you as closing attorney are (1) the Deed; (2) The Purchase Money Note; and (3) Mortgage (and assignment if applicable). These items should not be delivered out of trust or to any person except under the following conditions and instructions.
> ... 2. Pursuant to the Builder Lot Contract, previously entered into by and between Purchaser and Seller, the Lot Mortgage shall be a first lien Purchase Money Mortgage of said lot to be subordinated to construction financing upon the payment indicated in the Builder Lot Contract *conditioned upon the total amount secured by said lot not exceeding 75% of the fair market value of the lot and improvements.* ... 4. At and from closing ... (b) the original purchase money mortgage (and assignment if applicable), duly executed, must be recorded immediately following the deed as either a first lien Purchase Money Mortgage or subordinate to construction financing *in strict compliance with the terms of the Builder Lot Contract* ... (emphasis added).

Following a hearing, the master found the evidence of the manner of the loan closing showed it was the clear intent of the sellers to receive mortgages subordinate to that of the lenders. He further held the lenders' mortgages were entitled to priority based upon S.C. Code Ann. § 30-7-10 (1991), the recording statute. We disagree.

An action to establish lien priorities is an action in equity. *Fibkins v. Fibkins*, 303 S.C. 112, 399 S.E. (2d) 158 (Ct. App. 1990). Thus, this court may view the evidence to determine facts in accordance with our own view of the preponderance of the evidence, though we are not required to disregard the findings of the master. *Tiger, Inc. v. Fisher Agro, Inc.*, 301 S.C. 229, 391 S.E. (2d) 538 (1989); *Thomas v. Mitchell*, 287 S.C. 35, 336 S.E. (2d) 154 (Ct. App. 1985).

S.C. Code Ann. § 30-7-10 deals, among other things, with the recording of mortgages and provides in pertinent part as follows:

> In the case of a subsequent purchaser of real estate, or in the case of a subsequent lien creditor on real estate for valuable consideration without notice, the instrument evidencing the subsequent conveyance or subsequent lien must be filed for record in order for its holder to claim under this section as a subsequent creditor or purchaser for value without notice, and the priority is determined by the time of filing for record.

In our view, this case is controlled by the decision in *Crystal Ice Co. of Columbia Inc. v. First Colonial Corp.*, 273 S.C. 306, 257 S.E. (2d) 496 (1979). In that case our Supreme Court held knowledge of the existence of a purchase money mortgage was imputed to another mortgagee, and thus to its assignee, Crystal Ice, through its agent, the closing attorney. Therefore Crystal Ice was not a "subsequent purchaser without notice" and could not prevail under § 30-7-10 simply because its mortgage was recorded one minute before the purchase money interest. Under common law principles, the purchase money mortgage was entitled to priority because it is deemed in law to have been simultaneously transmitted with the conveyance of the interest in the property to the purchaser. The deed and purchase money mortgage take effect at the same time.

The lenders contend this case is distinguishable from *Crystal Ice* because in that case the purchase money mortgagee had no notice of the Crystal Ice mortgage. By contrast, they assert the sellers in this case had full knowledge of the construction loan and mortgage. This argument fails because the priority of the purchase money mortgage does not rest on an equitable principle of protecting the purchase money mortgagee from a "secret lien." *Crystal Ice* makes no mention of whether or not the purchase money mortgagee had knowledge of the Crystal Ice mortgage. Equity merely precludes the mortgagee who has knowledge of the purchase money mortgage from claiming priority based upon the recording statute. The common law recognition of the simultaneous effect of the conveyance to the purchaser of an interest capable of being encumbered with the conveyance by the purchaser of the purchase money mortgage establishes the priority. Therefore, knowledge of subsequent transactions by the purchase money mortgagee has no effect on the priority.

The lenders next argue the subordination agreement is ambiguous and should be construed most strongly against the sellers who drew it. The cardinal rule of contract interpretation is to ascertain and give effect to the intention of the parties and, in determining that intention, the court looks to the language of the contract. If the language is clear and unambiguous, the language alone determines the contract's force and effect. *United Dominion Realty Trust, Inc. v. Wal-mart Stores, Inc.*, 307 S.C. 102, 413 S.E. (2d) 866 (Ct. App. 1992). When a contract is unambiguous, clear and explicit, it must be construed according to the terms the parties have used, to be taken and understood in their plain, ordinary and popular sense. *C.A.N. Enters., Inc. v. South Carolina Health & Human Servs. Finance Comm'n.*, 296 S.C. 373, 373 S.E. (2d) 584 (1988). Lenders argue the provision is unclear because the phrase "total amount" contained in the 75% formula could be interpreted to mean only the Banks' mortgages. This interpretation strains the language. The word "total" means, in its plain, ordinary and popular sense, "1. Constituting or pertaining to the whole; entire. 2. Complete; utter; absolute." *The American Heritage Dictionary* 1280 (2d ed. 1985). Accordingly, we conclude the subordination provision is clear and unambiguous in providing the total

loans must not exceed 75% of the fair market value of the lot and improvements in order to trigger subordination of the purchase money mortgage to the construction loan.

Lenders next assert the equitable defenses of estoppel and laches. They argue the sellers should be estopped to assert priority because the sellers never asserted this position when the closings occurred. At that time no construction funds had been disbursed, and loss could have been avoided. This position overlooks the fact that the recordation information on the mortgage documents does not reflect the order of priority. Without notice of the defect, sellers cannot be required to respond. *See Baker v. Mutual Loan & Inv. Co.*, 218 S.C. 47, 61 S.E. (2d) 387 (1950) (requiring the party sought to be estopped to have knowledge of the facts or be in a position to learn of the facts with reasonable diligence). This same lack of notice precludes the application of laches. *See Jefferson Pilot Life Ins. Co. v. Gum*, 302 S.C. 8, 393 S.E. (2d) 180 (1990) (requiring the party to be charged with laches to have knowledge of facts upon which the claim is based); *Archambault v. Sprouse*, 218 S.C. 500, 63 S.E. (2d) 459 (1951) (declining to apply laches where there is no knowledge of wrong committed and no refusal to embrace opportunity to ascertain the facts). Even if the sellers were chargeable with knowledge of the facts, these defenses are unavailable to the lenders because an essential element of each defense is a lack of knowledge of the facts in question by the party asserting the defense. *Standard Fire Ins. Co. v. Marine Contracting & Towing Co.*, 301 S.C 418, 392 S.E. (2d) 460 (1990).

Reversed.

HOWELL C.J., and HOWARD, Acting Judge, concur.