THIS OPINION HAS 
 NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS
PRECEDENT IN 
 ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Ashley Villas Homeowners Association, Inc., Appellant,
v.
Geona Shaw Johnson; et al., Respondents.
 
 
 

Appeal From Charleston County
 Thomas L. Hughston, Jr., Circuit Court 
 Judge

Unpublished Opinion No. 2004-UP-614
Submitted November 1, 2004  Filed 
 December 7, 2004

REVERSED

 
 
 
Helen Ann Harper and Robert A. Kerr, Jr., both of Mt. Pleasant, 
 for Appellant.
Benjamin Goldberg, of Charleston, for Respondent.
 
 
 

PER CURIAM: Ashley Villas Homeowners Association appeals from an order 
 granting summary judgment to Respondents.  We reverse. 
 [1] 
 FACTS
 Ashley Villas is a residential neighborhood constituting 234 townhouse properties.  
 Thomas M. Evans (the developer) developed the neighborhood in 1974.  At 
 that time, the developer recorded the original restrictive covenants in the 
 Register of Mesne Conveyance (RMC) office for Charleston County.
 The developer built and maintained common recreation 
 areas in the neighborhood; however, he deeded the recreation areas to the 
 Ashley Villa homeowners in 1976.  The homeowners accepted the transfer and 
 created the Recreation Association to maintain the areas.  The Recreation 
 Association was incorporated as a nonprofit organization in March 1976. 
 By 1990, the neighborhood had fallen into a state 
 of disrepair.  As a result, a group of homeowners organized an effort to improve 
 the neighborhood.  The group sought the votes necessary to amend the original 
 covenants and to establish a homeowners association to enforce the covenants.  
 In December 1994, the group recorded the amended covenants and the creation 
 of the Homeowners Association in the RMC. 
 Initially, the Recreation Association continued 
 to own the recreation areas.  However, the Recreation Associations members 
 voted to transfer the recreation areas to the newly created Homeowners Association 
 because the association lacked the funds necessary to maintain the areas.  
 The Homeowners Association accepted the transfer in December 1998.
 On August 9, 2000, the Homeowners Association brought 
 an action to collect past due annual assessments from delinquent homeowners.  
 The trial court ordered arbitration and an arbitration hearing was held on 
 June 13, 2001.  The arbitrator found in favor of the Homeowners Association 
 and awarded it past due annual assessments and attorneys fees.  Respondents 
 appealed and the judge granted them a right to a jury trial.  The Homeowners 
 Association then filed a motion for summary judgment, which was denied on 
 December 20, 2001.  Respondents also filed a motion for summary judgment and 
 a hearing was held on September 18, 2003.  The trial court granted Respondents 
 motion for summary judgment on November 18, 2002.  The Homeowners Association 
 now appeals.
 STANDARD OF REVIEW  
 On appeal from an order granting summary judgment, we review all ambiguities, 
 conclusions, and inferences arising from the evidence in a light most favorable 
 to the non-moving party.  Ferguson v. Charleston Lincoln Mercury, Inc., 
 349 S.C. 558, 563, 564 S.E.2d 94, 96 (2002).  Summary judgment is appropriate 
 when it is clear that there is no genuine issue of material fact and the 
 conclusions and inferences to be drawn from the facts are undisputed.  
 Etheredge v. Richland Sch. Dist. One, 341 S.C. 307, 311, 534 S.E.2d 
 275, 277 (2000).  Moreover, summary judgment is proper only when the moving 
 party is entitled to a judgment as a matter of law.  Jackson v. Doe, 
 342 S.C. 552, 555, 537 S.E.2d 567, 568 (Ct. App. 2000).  
 Summary judgment is not appropriate where further inquiry into the facts 
 of the case is desirable to clarify the application of the law.  Tupper 
 v. Dorchester County, 326 S.C. 318, 325, 487 S.E.2d 187, 191 (1997). 
 Summary judgment should not be granted even when there is no dispute as 
 to evidentiary facts if there is dispute as to the conclusion to be drawn 
 from those facts.  Id.  Summary judgment is a drastic remedy, which 
 should be cautiously invoked so that no party will be improperly deprived 
 of a trial of the disputed factual issue.  Schmidt v. Courtney, 357 
 S.C. 310, 318-319, 592 S.E.2d 326, 331 (Ct. App. 2003).  
LAW/ANALYSIS

I. Extrinsic Evidence

The
Homeowners Association argues the trial court erred in admitting extrinsic
evidence to explain the terms of the original covenants because the evidence
violates the parol evidence rule.  We
agree.
 The parol evidence 
 rule prevents the introduction of extrinsic evidence of agreements or understandings 
 contemporaneous with or prior to execution of a written instrument when 
 the extrinsic evidence is to be used to contradict, vary, or explain the 
 written instrument. Redwend Ltd. Pship v. Edwards,
 354 S.C. 459, 471, 581 S.E.2d 496, 502 (Ct. App. 2003).  The cardinal rule 
 of contract interpretation is to ascertain and give effect to the intention 
 of the parties and, in determining that intention, the court looks to the 
 language of the contract.  Friarsgate, Inc. v. First Federal Sav. and 
 Loan Assn of South Carolina, 317 S.C. 452, 457, 454 S.E.2d 901, 905 
 (Ct. App. 1995).  When a contract is unambiguous, clear, and explicit, 
 it must be construed according to the terms the parties have used, to be 
 taken and understood in their plain, ordinary, and popular sense.  Id.
Ashley Villas
original covenants state that the [c]ovenants shall automatically renew . . .
unless a change in part or in whole shall be agreed upon by a majority vote of
the homeowners of Ashley Villas.
Respondents argue the developer never intended for Ashley Villas to have
a homeowners association.To
prove the developer did not intend for the language change in part or in
whole to include altering the original covenants to allow for the creation of
a homeowners association, the trial court allowed an affidavit from Alvie
Evans, an individual involved in the original development of Ashley Villas, to
be admitted as extrinsic evidence.However,
taken in the light most favorable to the Homeowners Association, the language
of the original covenants was unambiguous, clear, and explicit in its
plain, ordinary, and popular sense.Therefore,
the trial court erred in admitting Evans affidavit to prove the developers
intent.
 
 Moreover, summary judgment was improper even if the language of the 
 original covenants was ambiguous because the determination of a partys intent 
 is a question of fact.  Southern Financial Servs., Inc. v. Middleton, 
 349 S.C. 77, 81, 562 S.E.2d 482, 484 (Ct. App. 2002).  Once the court decides 
 the language is ambiguous, evidence may be admitted to show the intent of the 
 parties.  Id.  Examined in the light most favorable to the Homeowners 
 Association, there is conflicting evidence as to the developers intent.  
 Evans affidavit stated the developer did not include a homeowners association 
 in the original covenants because he did not intend for one to be created.  
 Phoebe Miller, a past president and current treasurer of the Homeowners Association, 
 testified the developer did not provide for a homeowners association because 
 he wanted federal assistance financing.  Miller also testified the homeowners 
 created a Homeowners Association because of new federal guidelines requiring 
 a homeowners association for federal financing.  The conflicting evidence 
 of Evans affidavit and Millers testimony create a genuine issue of material 
 fact as to whether the developer intended to qualify for federal financing 
 or to exclude a homeowners association.  Therefore, even if the trial court 
 properly admitted the extrinsic evidence, summary judgment was improper because 
 a genuine issue of material fact exists regarding the developers intent.  
 
 II. South Carolina Nonprofit Corporation 
 Act
 The Homeowners Association also contends the trial court erred in holding 
 the Recreation Association failed to comply with the South Carolina Nonprofit 
 Corporation Act.  Specifically, the Homeowners Association argues a genuine 
 issue of material fact exists as to whether the notice requirements of section 
 33-31-1202(c) of the South Carolina Code (Supp. 2003) were satisfied.  We 
 agree.
 The sale of assets 
 by a nonprofit corporation other than in the ordinary course of activities 
 is governed by section 33-31-1202 of the South Carolina Code (Supp. 2003).  
 A nonprofit corporation may:

 [S]ell, lease, exchange, or otherwise dispose of all, or substantially all, 
 of its property, with or without the goodwill, other than in the usual and 
 regular course of its activities on the terms and conditions and for the consideration 
 determined by the corporations board if the proposed transaction is authorized 
 by subsection (b).

 S.C. Code Ann. § 33-31-1202(a) 
 (Supp. 2003).  
 However, section (c) further states:

 If the corporation does not have members, or does not have members entitled 
 to vote on the transaction, the transaction must be approved by a vote of 
 a majority of the directors in office at the time the transaction is approved.  
 In addition, the corporation shall provide notice of any directors meeting 
 at which such approval is to be obtained in accordance with Section 33-31-822(c).  
 The notice also must state that the purpose, or one of the purposes, of the 
 meeting is to consider the sale, lease, exchange, or other disposition of 
 all, or substantially all, of the property or assets of the corporation and 
 contain or be accompanied by a copy or summary of a description of the transaction.

 S.C. Code Ann. § 33-31-1202(c) 
 (Supp. 2003).  
 If a nonprofit corporation has members entitled to vote, the proposed transaction 
 must be approved by the board and by two-thirds of members votes cast or 
 a majority of the voting power, whichever is less.  S.C. Code Ann. § 33-31-1202(b) 
 (Supp. 2003).  A directors attendance at or participation in a meeting waives 
 the notice requirement for the meeting.  S.C. Code Ann. § 33-31-823(b) (Supp. 
 2003).
 At trial, 
 Respondents argued the transfer of the recreation area from the Recreation 
 Association to the Homeowners Association was invalid because the Recreation 
 Association failed to comply with the notice requirements of section 33-31-1202(c) 
 of the South Carolina Code.  Specifically, Respondents alleged some Recreation 
 Association members and directors did not receive notice of the transfer or 
 vote on the transfer, rendering the transfer invalid.  The trial court agreed 
 and held the Homeowners Association could not charge any assessments because 
 it did not own, lease, or have a duty to maintain the recreation areas as 
 the transfer was invalid for failure to comply with South Carolina Code section 
 33-31-1202.
 Taken in the light most favorable to the Homeowners Association, a genuine 
 issue of material fact exists as to whether the requisite number of directors 
 and members of the Recreation Association received notice and voted on the 
 transfer.  The parties presented conflicting evidence of the number of Recreation 
 Association directors at the time of the transfer.  Michael Oshinsky, president 
 of the Homeowners Association, testified the three directors who voted unanimously 
 to transfer the recreation areas to the Homeowners Association were also 
 the only remaining members of the Recreation Association.  Oshinsky testified 
 the notice provision of section 33-31-1202 of the South Carolina Code was 
 satisfied because the three directors were the only members and their vote 
 for the transfer waived the notice requirements.  Moreover, evidence suggested 
 the Recreational Association had no members after May 3, 1996, which was more 
 than four months prior to the September 22, 1996 vote to transfer the property 
 to the Homeowners Association. 
 [2]   Therefore, summary judgment was improper.
 REVERSED. 
 ANDERSON, STILWELL, and SHORT, JJ., concur.

 
 [1] We decide this case without oral argument pursuant 
 to Rule 215, SCACR.

 
 
 [2] The Record on Appeal includes a list of members, an itemized category 
 report, and check register for the Recreation Association.  The last deposit 
 for a membership fee was made on May 3, 1995, and because memberships were 
 annual the last membership would have expired on May 3, 1996, more than four 
 months before the meeting to transfer the recreation areas to the Homeowners 
 Association.