THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Samuel W. Rhodes, Jr. and Piedmont Promotions, Inc.,
Respondents,
v.
Marion L. Eadon, d/b/a C&B Fabrication, Appellant.
 
 
 

Appeal From Fairfield County
 Paul E. Short, Jr., Circuit Court Judge
 R. Markley Dennis, Jr., Circuit Court Judge

Unpublished Opinion No. 2006-UP-413
Heard November 9, 2006  Filed December 15, 2006

REVERSED AND REMANDED

 
 
 
Catharine Garbee Griffin, Charles E. Carpenter, Jr., Carmen V. Ganjehsani, of Columbia, for Appellant.
Creighton B. Coleman, of Winnsboro; Hoover C. Blanton, of Columbia; for Respondents.
 
 
 

PER CURIAM:  Marion L. Eadon appeals the jury award of $5,000 for breach of contract, $5,000 for breach of implied warranty, $3,000,000 for negligence, and $3,500,000 in punitive damages to Samuel W. Rhodes, Jr.  Eadon argues the trial court erred in (1) denying his motion to transfer venue; (2) allowing a verdict against him as an individual; (3) excluding evidence; (4) allowing a punitive damages award; and (5) denying his post-trial motions for a new trial absolute, or, in the alternative, a new trial nisi remittitur.  We reverse and remand.  
FACTS
In September 1998, Eadon formed C&B Fabricators, Inc., a statutory close corporation.  C&B Fabricators principal business was manufacturing and erecting outdoor signs.  Eadon hired Chuck Benenhaley to be manager of the company.  
Sometime in 1999, Rhodes, representing Piedmont Promotions, Inc. (Piedmont),[1] contacted Eadon and Benenhaley about building and erecting three outdoor advertising signs on property in Fairfield County.  Rhodes received a proposal from C&B Fabrication for the fabrication, building, and installation of the three signs.  Rhodes accepted the proposal in August 1999.  
The South Carolina Department of Transportation (SCDOT) had issued Piedmont permits to construct and maintain the three outdoor advertising signs upon the property in Fairfield County.[2]  Piedmont represented to SCDOT that the property would be the future sight of a car business, Interstate Auto Sales (Interstate), owned by Rhodes wife.  The property was located within an unzoned commercial or industrial area.[3]  
Subsequently, three signs were built and erected.  Rhodes tendered full payment, in three installments, for the signs.  Payment was made by check from Piedmont Promotions.  The first payment was made to C&B Fabrication; the other payments were made to C&B Fabricators.  
In December 2000, Rhodes noticed his middle sign was leaning.  Rhodes called Eadon several times about fixing the sign.  Rhodes also faxed Eadon about the sign; the faxes were addressed to Mr. Marion Eadon, C&B Fabricators.  Eadon informed Rhodes C&B Fabrication went out of business.  Nevertheless, Eadon sent a crew to fix the sign.  A few days later, a different sign fell onto I-77.  
SCDOT deemed all three signs unsafe and ordered Rhodes to remove the signs.  Thereafter, SCDOT cancelled Rhodess billboard permits because the signs were unsafe and present a hazard to the motoring public.  Rhodes submitted an application for new permits which SCDOT denied finding that Interstate was not a qualifying commercial business, but was being operated as a sham.[4]  Rhodes appealed to the Administrative Law Judge.  The ALJ affirmed SCDOTs decision holding Rhodess business was a sham activity,[5] not a commercial activity, and therefore the refusal to grant permits for re-erection of the outdoor signs was justified. 
In December 2001, Rhodes and Piedmont filed an action against Eadon, d/b/a C&B Fabrication, in Fairfield County.  The complaint alleged causes of action for breach of contract, breach of warranty, strict liability, fraudulent breach of contract, fraud, constructive fraud, negligent misrepresentation, negligence, bad faith, nuisance, and violation of the South Carolina Unfair Trade Practices Act.  
Eadon filed a motion to transfer venue to Clarendon County, the county of his residence.  The trial court denied the motion pursuant to section 15-7-10 of the South Carolina Code (2005).  Specifically, the trial court held the action arises out of injuries to real property and must be tried in the county in which the subject of the action or some part thereof is situated.  
A jury trial was held in Fairfield County.  At the trials conclusion, the only causes of action submitted to the jury were for breach of contract, breach of warranty, and negligence.  The jury returned a verdict of $5,000 for breach of contract; $5,000 in actual damages for breach of an implied warranty; and $3,000,000 in actual damages for negligence, and $3,500,000 in punitive damages.  
Eadon filed post-trial motions for judgment notwithstanding the verdict (JNOV), a new trial, a new trial nisi remittitur, and a post-trial review of the punitive damages award.  After hearing arguments, the trial court denied all of Eadons post-trial motions.  This appeal followed.      
LAW/ANALYSIS
Eadon argues the trial court erred in denying his motion to transfer venue.  We agree.
Motions to change the venue of a trial are addressed to the sound discretion of the trial court.  Garrett v. Packet Motor Express Co., 263 S.C. 463, 465, 210 S.E.2d 912, 912 (1975).  The trial courts ruling will not be disturbed unless it appears a manifest legal error was committed.  Turner v. Santee Cement Carriers, Inc., 277 S.C. 91, 94, 282 S.E.2d 858, 859 (1981).
Unless provided for in sections 15-7-10 or 15-7-20 of the South Carolina Code (2005), all actions shall be tried in the county in which the defendant resides at the time of the commencement of the action.  S.C. Code Ann. § 15-7-30 (2005);[6] see also Jeter v. S.C. Dept of Transp., 369 S.C. 433, ___, 633 S.E.2d 143, 147 (2006) (interpreting section 15-7-30 to mean all cases not falling within sections 15-7-10 or 15-7-20 must be tried in the county of defendants residence).  Section 15-7-10 provides that actions [f]or the recovery of real property or of an estate or interest therein or for the determination in any form of such right or interest and for injuries to real property, must be tried in the county in which the subject of the action or some part thereof is situated.[7]      
In Coastal Mall, Inc. v. Askins, 265 S.C. 307, 217 S.E.2d 725 (1975), the Supreme Court of South Carolina analyzed the rule fixing venue of actions for injuries to real property.  The court noted the term injury is used in a technical sense and as meaning every wrong which in legal contemplation is an injury to real property, and the rule is not limited to actions for physical injury to realty, or to physical interference therewith . . .  Id. at 310, 217 S.E.2d at 726 (citation omitted).  The court also noted a statute relating to actions for injuries to real property does not apply where an action for certain relief is essentially one to enforce a personal obligation.  Id. at 310, 217 S.E.2d at 727 (citation omitted).  The court found the pivotal question at hand was not whether there was any remote or incidental injury to real property, but rather what is the subject of the action.  Id. at 311, 217 S.E.2d at 727.  The court interpreted subject of the action to mean the plaintiffs primary right.  Id. at 311-12, 217 S.E.2d at 727.
In Coastal Mall, the defendant, Askins, agreed to construct a business mall, including a pre-designed canopy structure, for Coastal Mall.  When a portion of the canopy collapsed rendering it useless, Coastal Mall filed an action alleging Askins negligently installed the canopy structure.  The court found the subject of the action was Coastal Malls right to have a construction contract properly performed.  Id. at 312, 217 S.E.2d at 727.  Thus, the court held venue was not proper in the county of Coastal Malls property and should have been transferred to the county of Askinss residence.  Id. at 312, 217 S.E.2d at 727-28.  
Similarly, in Friarsgate, Inc. v. Irmo, 281 S.C. 588, 589, 316 S.E.2d 423, 424 (Ct. App. 1984), this court held section 15-7-10 was inapplicable.  In Friarsgate, the court found no injury to real property because the suit was not filed to recover an estate or interest in real property, or for a determination that it has an estate or interest in real property.  Id. 
Thus, in order to find venue is proper under section 15-7-30, the court must find the plaintiffs primary right arises from an injury to real property; it is not sufficient to find an injury to real property has resulted from the actions of the defendant.  In this case, the main impetus behind the lawsuit is the alleged breach of contract and/or negligence in constructing the outdoor signs by Eadon.  Indeed, as in Coastal Mall, if there be any injury to real property involved in this case such was only to that which became realty upon being constructed by the defendant under his contract.  265 S.C. at 311, 217 S.E.2d at 727.  Accordingly, we find venue was not proper in Fairfield County and the trial court erred in failing to grant Eadons motion to transfer venue to Clarendon County.  Because the trial court had no jurisdiction to do anything but grant a change in venue, we reverse and remand for entry of an order changing the venue to Clarendon County.[8] 
CONCLUSION
Based on the foregoing we hold the trial court erred in denying the motion to transfer venue.  In view of our disposition of this case, we need not address Appellants remaining issues.  See Whiteside v. Cherokee County Sch. Dist. No. One, 311 S.C. 335, 340, 428 S.E.2d 886, 889 (1993) (stating appellate court need not address remaining issues when resolution of prior issue is dispositive).  The decision of the circuit court is accordingly
 REVERSED and REMANDED. 
 ANDERSON, HUFF and BEATTY, JJ., concur.

[1] 
Rhodes is President and sole owner of Piedmont. 
[2]  Under the Highway Advertising Control Act, the General Assembly granted SCDOT the authority to issue permits for the erection and maintenance of commercial outdoor signs and to promulgate regulations governing the issuance of permits.  S.C. Code Ann. §57-25-150(A) (Supp. 2001).  The Act generally limits the placement of commercial outdoor advertising signs to zoned industrial areas, zoned commercial areas, unzoned commercial areas, or unzoned industrial areas.  S.C. Code Ann. §57-25-140(7) & (8) (Supp. 2001).  
[3]  According to S.C. Code Ann § 57-25-120(4) (Supp. 2000) an unzoned commercial or industrial area is the land occupied by the regularly used building, parking lot, and storage and processing area of a commercial business or industrial activity and land within six hundred feet of it on both sides of the highway.
[4] 
A sham activity is defined as, any activity that is seemingly a commercial or industrial activity but which was created primarily or exclusively to qualify an area as an unzoned commercial or industrial area and which does not conduct any meaningful business at the activity site.  25A S.C. Code Ann. Regs. 63-342 (U) (Supp. 2000).      
[5] 
The ALJ acknowledged that Piedmont initially qualified for the permits by proposing to conduct a commercial business within six hundred feet of the highway.  However, the ALJ found Interstate failed to maintain the standards established to constitute qualifying commercial activity, citing that the water service was cut off, there was no operable restroom, the cars onsite were vandalized and had not been repaired and that two or three cars were inoperable. 
[6]  The 2005 amendments to 15-7-30 are not applicable to this case.  See 15-7-30 (Supp. 2005) (providing amendments are applicable to causes of action arising on or after July 1, 2005).
[7]  The 2006 amendments to 15-7-10 are not applicable to this case.  See Act No. 354, 2006 S.C. Acts 2779, 2780 (providing amendment does not affect pending actions).   
[8]  We note the unchallenged ruling by the trial court that the signs were fixtures on Rhodess property does not affect our decision.  The fact the signs were fixtures is irrelevant for determining whether the subject of the action involves an injury to real estate.