428 S.E.2d 886 (1993)
Wayne WHITESIDE, Patsy Price Whiteside and Jan Whiteside Quinn, Primary Appellants, and
E.L. Tate, Jodean O. Lemmons, Jr., Eddie L. Gorski, and John S. Wheeler, Individually and In Behalf of Class Composed of Those Persons Owning Taxable Real and Personal Property in Cherokee County, South Carolina, as Intervening Petitioners, Secondary Appellants,
v.
CHEROKEE COUNTY SCHOOL DISTRICT NO. ONE, Mary H. Mostellar, Walter J. Smith, Gloria G. Rosemond, J. Arthur Bridges, Jr., James W. Brown, Sandra B. Greene, John A. Leazer, V. Stephen Moss, and Joe Dean Spencer, in their official capacities as member of the Board of Trustees of Cherokee County School District No. One, Respondents.
No. 23833.
Supreme Court of South Carolina.
Heard November 16, 1992.
Decided April 5, 1993.
Rehearing Denied May 5, 1993.
Dwight F. Patterson, Jr., of Perrin, Perrin, Mann & Patterson, Spartanburg, for primary appellants.
Paul R. Hibbard, of Johnson, Smith, Hibbard & Wildman, Spartanburg, for secondary appellants.
Kenneth L. Childs and David T. Duff, both of Childs & Duff, P.A., Columbia, for respondents.
FINNEY, Justice:
This appeal is from a circuit court declaratory judgment that a lease-purchase agreement contemplated by Respondents Cherokee County School District Number One (District), through its Board of Trustees (Board), is not within the scope of S.C.Code Ann. § 59-19-250 (1990) and does not require prior approval from the Cherokee County Council (Council). We affirm.

I. FACTS
Without prior approval of Council, the Board undertook consideration and implementation of a plan to finance new construction and renovation of District school buildings and facilities by means of a leasepurchase agreement, key provisions of which had been stipulated by the parties. The agreement provided for District-owned real estate to be leased to a non-profit corporation for a period of twenty or more years for a nominal sum under a base *887 lease. The corporation would perform agreed-upon construction and renovation on the premises, then lease the completed facilities back to the District on an annual basis under a project lease structured to retire the debt owed on the improvements.
The corporation would obtain financing for the project through the sale of certificates of participation issued under a trust agreement between the corporation and a financial institution as trustee. The certificates would be sold to underwriters who would, in turn, resell them to investors in a public offering. The corporation and trustee would enter into an assignment agreement whereby the corporation assigned all its rights under both the base and project leases, with certain exceptions, to the trustee to maintain such rights for the benefit of the certificate holders and to secure payment therefor, which would be derived from revenue produced by the project lease and facilities.
A non-appropriation clause in the leasepurchase agreement would allow the District to terminate the project lease either by giving written notice prior to the end of a fiscal year that it would not renew for the succeeding year, or simply by not making a specific appropriation for the required annual renewal payment. In the event the District prematurely terminated the project lease by purchasing the corporation's interest in the facilities, the District would pay one dollar plus such portion of future rents as would constitute the principal due on the project and a redemption premium on the certificates, if applicable. Should the District fail to renew the project lease prior to expiration of the base lease, the corporation may lease the property to another tenant provided it is used for a public purpose.
The District would retain title to the property throughout the transaction. Upon expiration of the base lease, possession of the property, including improvements, would revert to the District free and clear of any lease-hold interest.
Primary appellant Wayne Whiteside, as a resident and taxpayer of the District, instituted this action against the District and the Board pursuant to the Uniform Declaratory Judgments Act, S.C.Code Ann. § 15-53-10, et seq., (1976), and Rule 57, SCRCP. The complaint sought a declaration of the Board's authority to sell or lease District property without the express advance approval of the Cherokee County governing body as required by Section 59-19-250. After initiating this action, Wayne Whiteside died. Patsy Price Whiteside and Jan Whiteside Quinn (Whitesides) were added as plaintiffs, and an amended complaint was filed August 19, 1992.
The District's amended answer denied that Section 59-19-250 was applicable to the proposed transaction; alleged that the Board derived its authority from S.C.Code Ann. 59-19-125 (1990) and Acts No. 258, § 1, and 685, §§ 29, 32, 1967 S.C.Acts 356, 1383; asserted that Section 59-19-250 would violate Articles VIII and XI of the South Carolina Constitution if it empowered Council to approve or disapprove the transaction; and counterclaimed for a declaration that Section 59-19-250 did not apply to the intended lease-purchase arrangement and that the Board may legally consummate the transaction without prior approval of Council.
Another action, E.L. Tate, et al., v. Dr. V. Sue Cleveland, et al., was filed July 29, 1992, by the secondary appellants against the District, the Superintendent, and the Board seeking the identical relief sought by the Whitesides plus a temporary injunction against the lease-purchase project. On July 30, 1992, the secondary appellants filed an amended application and petition to intervene in the Whitesides' action or, in the alternative, to consolidate the two cases pursuant to Rule 42(a), SCRCP. The court's order of August 14, 1992, granted the petition of the secondary appellants to intervene, declined to consolidate the two cases, refused to issue a restraining order against the District, and granted the District's motion to expedite the proceedings.
After a hearing on the merits, the court issued a final order on September 11, 1992, entering judgment in favor of the District on its counterclaim and against the appellants on their amended complaint. The trial court concluded that "lease-purchase" *888 was not within the meaning of the term "lease" as envisioned under Section 59-19-250; thus, the approval of Council was not required. The trial judge relied upon Section 59-19-125, which permits the Board to sell or lease district property without the consent of Council provided the facilities are used for a public purpose.
The trial court reasoned that even if the scope of Section 59-19-250 encompassed the proposed agreement, the Board's decision to enter into the arrangement was sufficient to satisfy the statutory consent requirement. This conclusion was based on the fact that when the Cherokee County Board of Education was abolished, all of its powers, duties, and responsibilities were devolved upon the Board by Acts No. 258, § 1, and No. 685, §§ 29, 32, 1967 S.C.Acts, 356.

II. ISSUES
On appeal, appellants allege the trial court erred in holding, inter alia, 1) that lease-purchase financing is not within the definition of the term "lease" as used in Section 59-19-250; 2) that abolishment of the County Board of Education and devolvement of its powers upon the Board empowered the Board to execute the lease without Council's consent under Section 59-19-250; and 3) that the Board may lease school property for a civic or public purpose under Section 59-19-125, which does not require the consent of any other government body, when Section 59-19-250 is also applicable and not in conflict with Section 59-19-125.
Appellants argue the legislative intent behind Section 59-19-250 is to insure approval by the designated government body of transactions involving the potential loss of beneficial use of school property and that the base lease is a form of lease contract contemplated by the statute. Appellants assert, as controlling, a 1972 amendment to the statute providing that in counties having no county board of education, prior approval by the governing body of the county is required.

III. LAW/ANALYSIS
The dispositive issue in this case is whether or not the subject lease-purchase arrangement is within the scope of Section 59-19-250 which provides, in pertinent part:
The school trustees of the several school districts may sell or lease school property, real or personal, in their school district whenever they deem it expedient to do so and apply the proceeds of any such sale or lease to the school fund of the district. The consent of the county board of education or, in those counties which do not have a county board of education, the governing body of the county, shall be first obtained by the trustees desiring to make any such sale or lease.
The trial court determined, first, that lease-purchase acquisitions of school property are not within the scope of Section 59-19-250; and second, that even if such were the case, subsequently enacted Section 59-19-125 enables the Board to proceed without the consent of the county governing body. The relevant portion of Section 59-19-125 provides as follows:
Each district board of trustees may lease any school property for a rental which the board considers reasonable or permit the free use of school property for:
(1) civic or public purpose ...
The elementary and cardinal rule of statutory construction is that the court ascertain the intent of the legislature. Horn v. Davis Electrical Constructors, Inc., ___ S.C. ___, 416 S.E.2d 634 (1992). The words of the statute must be given their plain and ordinary meaning without resorting to subtle or forced construction to limit or expand its operation. First Baptist Church of Mauldin v. City of Mauldin, ___ S.C. ___, 417 S.E.2d 592 (1992). In Browning v. Hartvigsen, 307 S.C. 122, 414 S.E.2d 115 (1992), we reiterated the requirement that statutes, as a whole, must receive practical, reasonable and fair interpretation consonant with the purpose, design and policy of lawmakers.
We are persuaded that from its inception until the most recent amendment in *889 1973, Section 59-19-250 contemplated the term "lease" in the conventional sense. In 1989, during the evolution of lease-purchasing as a prevailing method of acquiring school facilities, the legislature enacted Section 59-19-125. This court has held that where there is one statute addressing an issue in general terms and another statute dealing with the identical issue in a more specific and definite manner, the more specific statute will be considered an exception to, or a qualifier of, the general statute and given such effect. Wilder v. South Carolina Hwy. Dept., 228 S.C. 448, 90 S.E.2d 635 (1955). Moreover, later legislation supersedes earlier laws addressing the identical issue. State v. Brown, 289 S.C. 581, 347 S.E.2d 882, 884-85 (1986); Duke Power Co. v. South Carolina Pub. Ser. Comm'n, 284 S.C. 81, 326 S.E.2d 395 (1985).

IV. CONCLUSION
We conclude that it is logical to believe the legislature was cognizant of lease-purchasing transactions in the enactment of the later statute, and hold that the leasepurchase arrangement under consideration is within the scope of Section 59-19-125. Therefore, this Court holds that Section 59-19-125 will be considered an exception to, or qualifier of, Section 59-19-250 and given such effect.
Accordingly, we affirm the judgment of the circuit court. In view of our disposition of this issue, we need not address appellants' remaining exceptions. Rule 220(c), SCACR; Hossenlopp By Hossenlopp v. Cannon, 285 S.C. 367, 329 S.E.2d 438 (1985).
AFFIRMED.
HARWELL, C.J., and CHANDLER, TOAL and MOORE, JJ., concur.