641 S.E.2d 53

Timothy E. KEANE and Karen L. Keane, Respondents,

v.

LOWCOUNTRY PEDIATRICS, P.A.; Beaufort Pediatrics, P.A.; Francis E. Rushton, Jr.; Joseph H. Floyd; Lawrence R. Coleman, and Christine T. Chiaviello, Appellants.

No. 4199.

Court of Appeals of South Carolina.

Heard Oct. 11, 2006.

Filed Jan. 29, 2007.

138

James S. Gibson, Jr. and Mary B. Lohr, both of Beaufort, and William L. Howard, Sr., of Charleston, for Appellants.

Robert V. Mathison, Jr. of Hilton Head Island, for Respondents.

HEARN, C.J.:

In this legal and equitable action, Lowcountry Pediatrics, P.A., and Drs. Francis E. Rushton, Joseph H. Floyd, and Lawrence R. Coleman (collectively "Lowcountry"), appeal the trial court's order awarding damages to Drs. Timothy and Karen Keane. Lowcountry contends the trial court erred in: (1) including goodwill in its valuation of Lowcountry; (2) awarding prejudgment interest; and (3) awarding punitive damages. We reverse.

## FACTS

On September 1, 1986, Dr. Rushton and Dr. Floyd organized Lowcountry Pediatrics. Rushton and Floyd later added Dr. Coleman to the practice, and the three became the senior physicians and shareholders of Lowcountry. Eventually, the Keanes and Dr. Christine Chiavello joined the practice, and all three became shareholders of Lowcountry.[1]

Upon the admission of each new member into Lowcountry, the doctors amended the shareholder agreement to reflect the current value of a withdrawing shareholder's stock. The shareholder agreement provided that upon a shareholder's withdrawal from the practice that shareholder's shares of stock would be bought back by Lowcountry at an agreed upon price. The shareholder agreement indicated the purchase price for the withdrawing shareholder's stock would remain in effect until a new value was agreed upon, in writing, following the end of each fiscal year. Between 1989 and 1998, the doctors amended the shareholder agreement on three differ-

---

1. The Keanes, along with the other doctors, signed employment contracts. These contracts provided for a one-year term of employment and contained a non-compete clause.

ent occasions, and each amendment occurred after Lowcountry received an appraisal to calculate its fair market value. The 1998 amendment was the final amendment prior to this controversy. Article 3.1 of the 1998 revision to the shareholder agreement stated:

> *Value of shares of stock:* For the purpose of this Third Amendment to Shareholders Agreement, the value of each share of issued stock ... of the Agreement ... is $15.30. This value has been agreed upon by the shareholders as representing the fair value of each share of stock, including goodwill of the Association.

According to this amendment to the shareholder agreement, the Keanes owned a combined thirty percent of the shares in Lowcountry.[2]

Some time after the third amendment to the shareholder agreement, the senior physicians began to contemplate the end of Lowcountry, complaining about the lack of physical space in the office as well as their differing views with the Keanes about the proper management of the practice. As a result, on December 20, 1999, the senior physicians sent a letter to the Keanes notifying them of their desire to "split up Lowcountry Pediatrics." The Keanes, however, had no desire to dissolve the practice, and despite the senior physicians' repeated attempts to discuss dissolution, the Keanes declined to withdraw from the practice.

Because no agreement could be reached to "split-up" Lowcountry, the senior physicians called a shareholder meeting. At the shareholder meeting, the doctors were to vote on, among other items, removing the non-complete agreement and obtaining an appraisal to value the shares of Lowcountry in order to effectuate the buy-out of the Keanes and Chiaviello.[3] At the meeting, the senior physicians voted in favor of removing the non-compete clause from the employment agreement. The Keanes and the senior physicians disagreed on the appraisal. The Keanes wanted the individual physicians' goodwill included in the valuation of Lowcountry, but the senior

---

2. The Keanes collectively owned 3,000 of the 10,000 shares of Lowcountry.

3. Chiaviello voluntarily resigned from the practice at this time. Chiaviello's resignation was accepted at the shareholders meeting.

physicians did not. As a result of this disagreement, the senior physicians and Chiaviello voted to obtain an appraisal of Lowcountry by Webster, Rogers and Company with the Keanes abstaining from the vote. A "draft" appraisal was subsequently undertaken, and the appraisal indicated a value of $22.95 per share for the Lowcountry stock, excluding the individual physicians' goodwill, with a total value of stockholders' equity of $229,500.

Based on this valuation, the senior physicians offered to purchase the Keanes' shares for $68,850. Alternatively, the senior physicians gave notice of their intentions to withdraw from Lowcountry, offering to sell their shares to the Keanes for the same per share price. The senior physicians provided the Keanes with sixty days to respond or Lowcountry would be dissolved pursuant to the shareholder agreement. In June of 2000, the senior physicians increased their purchase offer to $100,000 for the Keanes' interest in Lowcountry. The Keanes, however, continued to refuse to withdraw from the practice. Lowcountry continued operating as a practice until July 24, 2000, sixty days after which the offer to buy or sell the senior physicians' shares had expired.

At this time, the senior physicians filed the articles of dissolution; changed the locks on the building; and opened their own practice, Beaufort Pediatrics, at the same location.[4] All of the assets of Lowcountry, including the equipment, supplies, patient records, and bank accounts were utilized by Beaufort Pediatrics. However, the accounts receivable of Lowcountry had been collected and distributed to the Keanes in proportion to their interest in Lowcountry. The senior physicians also paid Lowcountry for the use of the fixed assets, rent, and supplies. This money was also placed into the account for Lowcountry and distributed according to the interest of the shareholders, including the Keanes.

On September 22, 2000, the Keanes brought this action against Lowcountry alleging numerous causes of action, including a derivative action, a declaratory judgment action, and a claim pursuant to sections 33–14–310 and 320 of the South Carolina Code (Supp.2000) to determine the fair market value

---

4. The Secretary of State eventually returned the articles of dissolution to Lowcountry.

of Lowcountry. To this end, the Keanes obtained an appraisal of Lowcountry performed by Louis Fleishman.[5] Using the discounted future cash flow method, which included the individual physicians' goodwill, Fleishman valued Lowcountry at $1,319,200. Fleishman valued the tangible assets at a total of $401,344, with $42,344 in fixed assets, $18,000 for supplies, and $341,000 for accounts receivable. He valued the general intangibles, including the individual physicians' goodwill, at $917,856.

The master-in-equity: (1) determined the value of Lowcountry was $1,319,200; (2) found the Keanes were only entitled to thirty percent of the $917,856 intangible value of Lowcountry as they had already received their thirty percent interest in the tangible assets of Lowcountry; (3) awarded the Keanes $275,296 for their thirty percent interest in Lowcountry; (4) ordered prejudgment interest on the $275,296 award; (5) found the senior physicians had willfully and wantonly violated their fiduciary duties to the Keanes; and (6) awarded $50,000 in punitive damages to the Keanes.[6] This appeal followed.

## STANDARD OF REVIEW

■ This appeal involves both equitable and legal causes of action. When both equitable and legal causes of action are maintained in one suit, each must be analyzed separately according to its own identity as legal or equitable. *Jordan v. Holt*, 362 S.C. 201, 205, 608 S.E.2d 129, 131 (2005); *Future Group, II v. Nationsbank*, 324 S.C. 89, 97, 478 S.E.2d 45, 49 (1996).

■ A corporate dissolution is an action in equity. *Jordan*, 362 S.C. at 205, 608 S.E.2d at 131. An action for shareholder oppression is also one in equity. *McDuffie v. O'Neal*, 324 S.C. 297, 303, 476 S.E.2d 702, 705 (Ct.App.1996). In addition, an action to determine the fair market value of

---

5. Fleishman previously prepared an appraisal valuing Lowcountry in 1995, utilizing the "discounted cash flow method," which included goodwill.

6. After receiving post-trial motions, the master issued an amended order correcting some computational errors but provided no substantive changes.

stocks owned by a dissenting shareholder constitutes a proceeding in equity to be tried by a judge without a jury. *Defender Props., Inc., v. Doby,* 307 S.C. 336, 338, 415 S.E.2d 383, 384 (1992). In an action in equity referred to a master, the appellate court may view the evidence to determine facts in accordance with its own view of the preponderance of the evidence, though it is not required to disregard the findings of the master. *Friarsgate, Inc. v. First Fed. Sav. & Loan Ass'n,* 317 S.C. 452, 456, 454 S.E.2d 901, 904 (Ct.App.1995).

The determination of the appropriateness of an award of pre-judgment interest, on the other hand, is a question of law because the right to relief is entirely statutory. *See, e.g., Harvey v. S.C. Dep't of Corrections,* 338 S.C. 500, 507, 527 S.E.2d 765, 769 (Ct.App.2000) (finding "where the relief sought is entirely statutory ... the action is one at law."). Likewise, an action for punitive damages arising from a breach of fiduciary duty is a question of law. Jordan, 362 S.C. at 205, 608 S.E.2d at 131. "In an action at law, on appeal of a case tried without a jury, the findings of fact of the judge will not disturbed upon appeal unless found to be without evidence which reasonably supports the judge's findings." *Townes Assocs. v. City of Greenville,* 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976).

## LAW/ANALYSIS

### I. Calculation of Fair Market Value

Lowcountry argues the trial court erred in including the value of the physicians' individual professional goodwill in the calculation of the fair market value of the association. We agree.

While both parties correctly point out that no South Carolina authority specifically addresses the propriety of the inclusion of the physicians' individual professional goodwill in the context of a dissolution of a professional association, we believe the cases of *Donahue v. Donahue,* 299 S.C. 353, 384 S.E.2d 741 (1989), and *Weinberg v. Wallace,* 314 S.C. 183, 442 S.E.2d 211 (Ct.App.1994), are illustrative.

In *Donahue,* Wife sought an interest in Husband's professional dental practice as part of the equitable distribution of

the marital estate. 299 S.C. at 358, 384 S.E.2d at 744. The family court's valuation of the professional practice included Husband's professional goodwill, and Husband appealed. *Id.* In considering Husband's arguments, the supreme court reasoned that "the very nature of a professional practice is that it is totally dependent upon the professional." *Id.* at 360, 384 S.E.2d at 745. Moreover, the supreme court recognized the speculative nature of professional goodwill because its valuation is based on the doctor's future earnings, which are totally dependent upon the professional. *Id.* at 359, 384 S.E.2d at 745 (citing *Casey v. Casey,* 293 S.C. 503, 362 S.E.2d 6 (1987) (acknowledging the speculative nature of goodwill being dependent upon future earnings)). The supreme court reasoned that professional goodwill:

[A]ttaches to the person of the professional man or woman as a result of confidence in his or her skill and ability. It does not possess value or constitute an asset separate and apart from the professional's person, or from his individual ability to practice his profession. It would be extinguished in the event of the professional's death, retirement or disablement.

*Id.* at 359, 384 S.E.2d at 745 (citations omitted). As a result, the supreme court held it was error to include professional goodwill in valuing Husband's dental practice. *Id.* at 360, 384 S.E.2d at 745.

The view of professional goodwill attaching solely to the professional, not to the association, has been expanded outside of the family court arena. In *Weinberg v. Wallace,* the court of appeals addressed whether Weinberg was allowed to recover for an alleged conversion of goodwill associated with a family business that was operated by Wallace. 314 S.C. at 185, 442 S.E.2d at 212. The court of appeals, citing the *Donahue* analysis, reasoned:

If the business is a professional practice, then [goodwill] attaches solely to the person of the professional man or woman as a result of confidence in his or her skill and ability and does not possess value or constitute an asset separate and apart from the professional's person.

*Id.* at 187, 442 S.E.2d at 213 (internal quotations omitted).

The testimony of the Keanes' expert, Fleishman, echoes the decisions in *Donahue* and *Weinberg* regarding the speculative

nature of valuing the physicians' individual goodwill as well as its personal nature. When Fleishman testified, he conceded that an element of the intangible value of Lowcountry is the "physicians (sic) and their individual reputation." Further, when asked hypothetically on cross-examination what the intangible value of a practice would be if three physicians were to quit the practice, Fleishman responded: "If they truly go away, and no longer practice then a large portion of the intangible value would go away," but that value would "be hard to arrive at." He continued:

> I would have to look and speculate and say what, what else is going to remain the same ... Well, I don't think I could say, you know, put a specific—well, that we'll take away half the intangibles or twenty percent or eight percent. There's no specific formula attached to that.

Further, Fleishman testified the speculation required to determine the value remaining with the practice once a physician leaves is due to its intangible nature, and that determining what Lowcountry is worth is "not entirely scientific."

The *Donahue* and *Weinberg* courts clearly held that South Carolina courts should not, in valuing a professional association, include the goodwill of the professional because of its speculative nature and the fact that goodwill "attaches solely to the person of the professional man or woman as a result of confidence in his or her skill and ability and does not possess value or constitute an asset separate and apart from the professional's person." *See Weinberg*, 314 S.C. at 187, 442 S.E.2d at 213. Fleishman's own testimony only reinforces that holding. As a result, the Keanes are not entitled to the $275,296 awarded by the master, which represented their thirty percent interest in the intangible value of Lowcountry.

 We do not intend for this opinion to be interpreted as barring parties from contractually agreeing to include personal goodwill in the valuation of a shareholder's interest upon dissolution. However, that theory was never advanced by the Keanes, either at trial or in their brief before this court, as the basis for their position.[7] Accordingly, we do not believe it is

---

7. Moreover, if the Keanes believed the terms of the shareholder agreement controlled, they should have been eager to accept the $68,850— not to mention the $100,000—offered by the senior physicians for their

appropriate to use it as an additional sustaining ground. *See I'on, L.L.C. v. Town of Mount Pleasant,* 338 S.C. 406, 420, 526 S.E.2d 716 (2000) (holding, in the context of an appellate court's authority to affirm for any reason appearing in the record, that "[a] respondent may abandon an additional sustaining ground . . . by failing to raise it in an appellate brief.") Moreover, even if we believed this argument was available as a basis for affirming, we do not agree that the language of the shareholder agreement controls this issue. The agreement states that the value of $15.30 per share "has been agreed upon by the shareholders as representing the fair value of each of stock, including goodwill of the Association." We do not perceive the language "goodwill of the Association" to be synonymous with the inclusion of individual physician's goodwill upon a dissolution of the practice, and absent specific language that individual goodwill should be used to value a shareholder's interest upon dissolution, we believe this issue is controlled by *Donahue* and *Weinberg.*

Next, Lowcountry argues that should we find the trial court incorrectly included the physicians' professional goodwill in the valuation of the Keanes' interest, we should use the value in its May 2000 appraisal to value the Keanes' interest. We agree in part and disagree in part.

 While we agree that the trial court erred in including the value of the goodwill of the individual physicians in the calculation of Lowcountry's fair market value, we disagree that the May 2000 appraisal is the appropriate gauge of Lowcountry's value. Lowcountry's May 2000 appraisal was merely a "draft," and the appraiser who prepared it did not testify at trial. Additionally, Lowcountry provided no other evidence of valuation of the corporate stock during the hearing. Therefore, we believe the best evidence regarding the tangible value for Lowcountry remains the Keanes' appraisal prepared by Fleishman, less the amount attributed to the individual goodwill of the physicians. Using the Keanes' own appraisal, we find, as did the trial court, that the fixed assets,

thirty percent interest in Lowcountry, as that offer exceeded by $22,950 the $45,900 the Keanes would have been entitled to under the shareholder agreement.

supplies, and accounts receivable of Lowcountry were worth $401,344.

In its amended order, the trial court found that "the money from the accounts receivable, rent and supplies purchases were placed into the Lowcountry account and distributed in accordance with the respective percentages of ownership." The trial court also found that the Keanes neither argued that the disbursements had been made, nor did the Keanes dispute that they had received their thirty percent of the tangible assets. As a result, the trial court determined that the $401,344 of accounts receivable, rent, and supplies had already been distributed to, and received by, the Keanes according to their respective thirty percent interest in Lowcountry.[8] Pursuant to our holding that the trial court incorrectly included the physicians' individual professional goodwill in valuing the Keanes' interest in Lowcountry, the Keanes are only entitled to their thirty percent of the tangible assets of the association. Because the Keanes have already received their entire thirty percent interest in the fair market value of Lowcountry, they are entitled to no additional distributions.

## II. Award of Prejudgment Interest

Lowcountry Pediatrics next contends the trial court erred in awarding prejudgment interest to the Keanes. We agree.

Section 34–31–20 of the South Carolina Code (2005) provides that "in all cases of accounts stated and in all cases wherein any sum or sums of money shall be ascertained and, being due, shall draw interest according to law, the legal interest shall be at the rate of eight and three-fourths percent per annum." Such prejudgment interest, however, is allowed on an obligation to pay money "from the time when, either by agreement of the parties or operation of the law, the payment is demandable, if the sum is certain or capable of being reduced to certainty." *Babb v. Rothrock*, 310 S.C. 350, 353, 426 S.E.2d 789, 791 (1993). In other words, an award of prejudgment interest is not proper if the measure of recovery

---

8. The Keanes do not appeal from this finding of the trial court. It is, therefore, the law of the case. *See Charleston Lumber Co. v. Miller Housing Corp.*, 338 S.C. 171, 175, 525 S.E.2d 869, 871 (2000) (holding an unappealed ruling, right or wrong, is the law of the case.).

is not fixed by conditions existing at the time the claim arose. *Id.*

In this matter, the trial court awarded $275,296 in actual damages to the Keanes pursuant to their claim for breach of fiduciary duty. At oral argument, however, the Keanes' attorney conceded these actual damages were based solely on the valuation of Lowcountry's stock, which is an equitable cause of action. In other words, the trial court found the damages under the legal and equitable causes of action to be one in the same. This award equaled the Keanes' thirty percent interest in the practice based on the Fleishman appraisal, which included goodwill. Pursuant to our holding that the trial court incorrectly included the physicians' individual professional goodwill in valuing the Keanes' interest in Lowcountry, we find the Keanes are not entitled to the $275,296 awarded to them by the trial court. Therefore, no award of actual damages exists upon which prejudgment interest can be awarded.[9]

## III. Punitive Damages

Lowcountry Pediatrics contends the trial court erred in ordering punitive damages to the Keanes on their claim for breach of fiduciary duty. We agree.

"Punitive damages can only be awarded where the plaintiff proves by clear and convincing evidence the defendant's misconduct was willful, wanton, or in reckless disregard of the plaintiff's rights." *Austin v. Specialty Transp. Serv.*, 358 S.C. 298, 313, 594 S.E.2d 867, 875 (Ct.App.2004). Punitive damages, however, may only be awarded upon an underlying finding of actual damages. *Dowling v. Home Buyers Warranty Corp.*, 311 S.C. 233, 236, 428 S.E.2d 709, 711 (1993).

In this matter, the trial court awarded $275,296 in actual damages to the Keanes pursuant to their claim for

9. In so holding we do not disregard our standard of review for the breach of fiduciary duty cause of action, which is a legal claim. Rather, we merely hold there are no damages to be awarded under the breach of fiduciary duty cause of action pursuant to our holding that the trial court incorrectly included the physicians' individual professional goodwill in valuing the Keanes' interest in Lowcountry's stock. The Keanes' concession at oral argument supports this view.

breach of fiduciary duty. This award equaled the Keanes' thirty percent interest in the goodwill amount as included in the Fleishman appraisal. As mentioned previously, the Keanes' attorney conceded during oral argument these actual damages were tied solely to the equitable valuation of Lowcountry's stock. Pursuant to our holding that the trial court incorrectly included the physicians' individual professional goodwill in valuing the Keanes' interest in Lowcountry's stock, we have removed the underlying award of actual damages on which the circuit court based the award of punitive damages. Therefore, the award of punitive damages cannot prevail without a finding of actual damages, and accordingly, the award of punitive damages is reversed.[10] *See Dowling,* 311 S.C. at 236, 428 S.E.2d at 711 (holding punitive damages may only be awarded upon an underlying finding of actual damages).

## CONCLUSION

Based on the foregoing, the order of the circuit court is hereby

**REVERSED.**[11]

STILWELL, J., concurs.

KITTREDGE, J., dissents in a separate opinion.

---

**10.** The Keanes' reliance on *Cook v. Atlantic Coast Line R. Co.,* 183 S.C. 279, 190 S.E. 923 (1937) is misplaced. The Keanes rely on *Cook* for the proposition that an award of punitive damages may be allowed to stand despite no finding of actual damages. That is not the import of *Cook,* however. The holding in *Cook* is that an award for punitive damages may be allowed to stand if "it is clearly shown that legal right has been willfully or recklessly invaded and that *nominal actual damages* were merged in the verdict for punitive damages." *Id.* at ——, 190 S.E. at 924 (emphasis added). Here, we have removed the award of punitive damages in its entirety, and accordingly, there is no award of actual damages to merge with the award of punitive damages. Therefore, *Cook* is inapplicable because that case requires, at a minimum, an award of nominal actual damages before an award of punitive damages may be upheld.

**11.** In light of our disposition of this case, we need not address the Keanes' remaining issue regarding the two-issue rule. *See Whiteside v. Cherokee County Sch. Dist. No. One,* 311 S.C. 335, 340, 428 S.E.2d 886, 889 (1993) (stating appellate court need not address remaining issues when resolution of prior issue is dispositive).

150

KITTREDGE, J., dissenting in part and concurring in part:

I dissent in part and concur in part. I respectfully dissent from the reversal of the master's award of actual and punitive damages to the Keanes. I agree with the majority opinion that the master's award of prejudgment interest to the Keanes should be reversed.

The first issue to address is our standard of review. Although the Keanes prevailed on multiple theories (legal and equitable), the majority focuses exclusively on the equitable corporate dissolution claim. By excluding consideration of the legal claim, the court easily segues to an equitable standard of review and determines its own view of the facts. The result is a factual recitation in a light most favorable to Appellants. I would not ignore the legal claim and the more deferential scope of review that flows from it.

The master found that Appellants breached their fiduciary duty to the Keanes. This finding has not been appealed and is the law of this case. See Dreher v. Dreher, 370 S.C. 75, 78 n. 1, 634 S.E.2d 646, 647 n. 1(2006) ("[A]n unappealed ruling becomes the law of the case and precludes further consideration of the issue on appeal[.]") (citing In re Morrison, 321 S.C. 370, 372 n. 2, 468 S.E.2d 651, 652 n. 2 (1996)). A fair reading of the master's order indicates the award of actual damages (for all causes of action) represented his judgment of the value of the Keanes's interest in Lowcountry Pediatrics. The majority so acknowledges in observing that "the trial court awarded $275,296 in actual damages to the Keanes pursuant to their claim for breach of fiduciary duty."

An action for breach of fiduciary duty is an action at law. As such, we are constrained to uphold the master's findings if supported by any evidence. See Jordan v. Holt, 362 S.C. 201, 205, 608 S.E.2d 129, 131 (2005) ("[A] claim of breach of fiduciary duty is an action at law and the trial judge's findings will be upheld unless without evidentiary support."). The master, who was in a better position to assess witness credibility and demeanor, viewed the evidence in a light less favorable to Appellants. I would hold there is evidence in the record to support the master's findings.

There is another reason I would not focus the analysis on corporate dissolution law. There was *no* corporate dissolution

(or "winding up") of the medical practice. Articles of dissolution were prepared and Appellants represented to the Keanes that the medical practice would be dissolved; the articles of dissolution, however, were not filed with the South Carolina Secretary of State's office. More to the point, Appellants conceded at trial that there was no dissolution [12] and that Lowcountry Pediatrics should be "considered a going concern." [13] After Appellants' initial efforts to force the Keanes from the medical practice failed (using the ploy of dissolution and otherwise), Appellants changed the locks to the office while the Keanes were on vacation. The medical practice continued without missing a beat, as Appellants simply replaced the sign for "Lowcountry Pediatrics" with "Beaufort Pediatrics" and carried on using Lowcountry's office equipment and phone number.

I would honor Appellants' trial stipulation to value the medical practice as a going concern. I would not, as the majority does, value "goodwill in the context of a dissolution of a professional association." There was no dissolution.

I now turn to the majority's rejection of goodwill as a component of the value of the medical practice. As pointed out by the majority, Article 3.1 of the April 22, 1998 amendments to the shareholder agreement made no change in the requirement to include the goodwill of Lowcountry Pediatrics in determining "the fair value of each share of stock." In my view, South Carolina law does not forbid parties from contracting to include goodwill as a component of value.[14] I see nothing in the *Donahue v. Donahue*[15] line of cases precluding consideration of goodwill when the parties so contract. *Donahue* and other cases cited by the majority do not address the

---

**12.** I would not permit Appellants to resurrect in this court an argument abandoned at trial.

**13.** Appellants had the medical practice appraised as a going concern in 1995 when Beaufort Memorial Hospital was considering purchasing Lowcountry Pediatrics. That value, obtained by and for Appellants, included goodwill and was "approximately $145,300 to $860,000."

**14.** Perhaps the shareholder agreement, by its terms, may be applied only in the case of a "withdrawing" shareholder, but such an argument was never made by Appellants.

**15.** 299 S.C. 353, 384 S.E.2d 741 (1989).

issue before us: whether parties may contractually bind themselves to include goodwill in the value of a professional association. It may be difficult to place a value on goodwill, but contracting to include goodwill is neither illegal nor contrary to public policy.

Because the shareholder agreement provides a basis for including goodwill in the value of the medical practice, it may appear that the master should have similarly embraced the $15.30 price per share of stock as set forth in the April 1998 amended shareholder agreement. There are two fundamental reasons why the master did not value the stock at $15.30 per share. First, Appellants have never relied on this figure, neither in the trial court nor this court. Second, when the parties' dispute came to a head in early 2000, Appellants commissioned a new appraisal of the practice—Appellants did not rely on the April 1998 assigned value of $15.30 per share. The result was a "draft" appraisal of $229,500 for the medical practice, or $22.95 per share. Appellants concede this "draft" appraisal "did not include good will [sic]." (Appellants' final brief, 11). Finally, beyond Appellants' "draft" appraisal, as the majority points out, Appellants "provided no other evidence of valuation of the corporate stock during the hearing."

The holding of the majority rests on the principle that "individual professional goodwill" is not a proper component of the value "in the context of a dissolution" of a professional practice. I do not necessarily oppose this principle. To reach this conclusion, however, we must ignore basic rules of issue preservation. See Wilder Corp. v. Wilke, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) (holding an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review). I have already noted that Appellants conceded at trial there was no dissolution and that the medical practice should be valued as a going concern.[16] The result the court reaches today (while ostensibly sound in the abstract) rests on issues and arguments that were never presented in the trial. We end up with a different case than the one tried before the master. I would honor our basic issue preservation rules and not permit Appellants to try a different case than was present-

---

16. Appellate counsel did not represent Appellants at trial.

ed in the trial court. I would not punish the Keanes—the Respondents—for failing to rebut in the trial court issues that were conceded and arguments that were never made at trial.[17]

The majority further finds that the Keanes never advanced the theory that they were entitled to goodwill because of its inclusion in the shareholder agreement "either at trial or in their brief before this court." This is not so. The Keanes did, in fact, rely on the agreement's inclusion of goodwill at trial and in brief to this court. For example, Dr. Timothy Keane testified about the shareholder agreement and answered affirmatively when asked if the agreement included "an allocation of Good Will [sic]." The record contains many references to the shareholder agreement and goodwill. In their brief to this court, the Keanes again relied on the language of the agreement, noting it "expressly included good will [sic]." (Respondents' final brief, 7). If it appears the agreement's inclusion of goodwill was not a focus at trial, it should not inure to Appellants' benefit on general issue preservation principles.

The bottom line is that in valuing the Keanes's interest in Lowcountry Pediatrics as a going concern and assessing damages, under the "any evidence" standard of review, there is evidence supporting the master's inclusion of goodwill in the value of the medical practice. Because there is some evidence to support the master's determination of value and award of actual damages, I would affirm the award.

I would also affirm the master's award of punitive damages to the Keanes. My analysis begins with this court's standard of review. We should affirm if there is any evidence in the record to support the master's finding that Appellants' misconduct was willful, wanton, or in reckless disregard of the Keanes's rights. See Jordan, 362 S.C. at 207, 608 S.E.2d at 132 ("[Appellate courts] must affirm the trial court's finding of punitive damages if any evidence reasonably supports the judge's factual findings."). I would find there is evidence in the record to support the master's finding.

---

17. While this court "may affirm any ruling, order, or judgment upon any ground(s) appearing in the Record on Appeal," Rule 220(c), SCACR, I know of no basis to reverse the trial court when the ground does not appear in the record.

Finally, I concur with the majority in result that the master's award of prejudgment interest to the Keanes should be reversed. "The proper test for determining whether prejudgment interest may be awarded is whether the measure of recovery, not necessarily the amount of damages, is fixed by conditions existing at the time the claim arose." *Butler Contracting, Inc. v. Court Street, LLC,* 369 S.C. 121, 133, 631 S.E.2d 252, 259 (2006). An award of prejudgment interest in this case would be improper because the measure of recovery was "not fixed by conditions existing at the time the claim arose." While the parties understood goodwill was to be included in the value, the varying approaches to goodwill valuation is at odds with the idea of a liquidated claim and a fixed measure of recovery.