700 S.E.2d 273

**James MOORE, Respondent,**

**v.**

**Jeannette M. BENSON and Thomas Lee Benson, Jr., Appellants.**

**No. 4745.**

Court of Appeals of South Carolina.

Submitted May 3, 2010.

Decided Sept. 22, 2010.

154

Jessica Ann Salvini, of Greenville, for appellants.

Edwin C. Haskell, III, and Chadwick Dean Pye, both of Spartanburg, for respondent.

PER CURIAM.

James Moore filed this action against Jeannette M. Benson and Thomas Lee Benson seeking damages and equitable relief based on allegations of *inter alia,* fraud, conversion, and breach of fiduciary duty arising from the sale of real property from Moore to the Bensons. The master ordered the Bensons to reconvey the property to Moore, and awarded Moore actual and punitive damages. This appeal followed. We affirm in part, reverse in part, and remand.[1]

## FACTS

Moore was eighty-eight years old at the time of the trial in 2008. Moore and Allean Moore were married in 1949. Throughout the marriage, Allean handled the bills and personal business. Moore and Allean lived on seventeen acres in Lyman, South Carolina, in the marital home.

Moore's daughter, Jeannette, testified she began the caretaking of her father as early as 1989. According to Jeannette, BB&T sent Moore a letter, dated January 14, 1999, stating that because Moore was to turn eighty, his retirement account needed to be closed and the money transferred to another account. The funds, $29,433.46, were transferred into account # 471, Jeannette's account. Jeannette testified Moore stated: "Jeannette, you have been taking care [of] me all of these years.... I am giving you all of this money." According to

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

her, she was to continue to take care of Moore and pay his bills. On February 16, 1999, Moore signed a durable power of attorney, appointing Jeannette as his attorney-in-fact.

Moore and Allean were divorced by family court orders filed on November 3, 2000, and January 8, 2001. The divorce decree awarded Moore the marital home, valued by the family court at $154,000, and further provided:

9. Husband is to inform wife, within forty-five (45) days of the date of this Order, relative to his election to buy her out; if he is able, or elects to do so, this is to be done within ninety (90) days of the date of this Order.

10. If husband is unable or unwilling to buy out wife's interest, then within forty-five (45) days of the date of this Order, the home is to be placed on the market for sale, under the control of the husband; upon the sale of the home, wife's interest in the marital estate is to be paid forthwith; if the home is not under contract for sale within six (6) months of being placed on the market, wife has the election to petition the Court for a judicial sale.

In the order addressing Allean's motion to reconsider, the family court ordered Moore to pay $52,851 to Allean to effectuate the order relative to equitable distribution.

On March 8, 2001, account # 471, with a balance of $30,338.35 was closed, withdrawing $30,215.82 and incurring a $122.53 early withdrawal penalty. The withdrawal check was made payable to Jeannette. On March 9, 2001, Moore signed a purchase contract and HUD settlement statement, selling the marital home to the Bensons.[2] The price paid for the property, $56,294.41, was the amount necessary to pay costs, a small mortgage remaining on the property, and the equitable distribution amount due to Allean.

John H. Heckman, III, a real estate attorney, testified he knew many of the Moore family members, including Moore, from a previous family land dispute. Heckman testified Jeannette and her husband Thomas were purchasing Moore's house to enable Moore to pay Allean her equitable distribution award. Heckman stated he met with Jeannette and Moore in

---

2. The Purchase Contract is dated March 1, 2001. The HUD Settlement Statement and the Title to Real Estate are dated March 9, 2001.

his conference room and explained each document to Moore. Moore appeared to understand he was selling his property. The proceeds check from the sale was made payable to Allean's attorney.

Moore testified he has a fifth-grade education and cannot read. He also testified Jeannette took over paying his bills after his divorce. He stated Jeannette would have him sign papers from time to time, but she did not explain to him what he was signing. He denied gifting the funds from his retirement account to Jeannette. He claimed he did not know he had signed a power of attorney or closing documents to sell his property. Moore testified he did not intend to sell the property to the Bensons, and he did not talk to Heckman at the closing. He testified he was in the hall at Heckman's office and Jeannette brought papers out for him to sign.

Jeannette testified Moore could read, stating he read the newspaper, his driver's manual, and readings in church. She testified she used the money withdrawn from Moore's retirement account to pay his expenses, such as his divorce attorney's fees of approximately $15,000, and medical bills. She testified Moore asked her to obtain money to pay the equitable distribution award from her siblings. She testified she could not get any of them to provide financial help.

Jeannette took Moore to Heckman's office. According to her, Heckman explained "everything" to Moore and he understood. She agreed to pay all of the taxes and insurance on the house, and Moore could live there for the remainder of his life.

Thomas, Jeannette's husband, testified he cashed in a $20,000 certificate of deposit, a savings bond worth more than $5,000, and borrowed $20,000 to contribute to the purchase of the house. He stated Moore contributed the remaining $10,000 from the funds transferred to Jeannette's name. Thomas also testified he was at the closing, and Moore was present and "fine."

The master found Jeannette breached her fiduciary duty to Moore and converted Moore's retirement account. He further found the Bensons paid for the property partially with funds belonging to Moore. He also found the Bensons intentionally concealed the truth from Moore and "were not only dishonest but in light of the facts of this case outrageous...." The

master ordered the Bensons to reconvey the property to Moore, pay actual damages of $3,770.26, and pay punitive damages of $25,000. This appeal followed.

## STANDARD OF REVIEW

"When legal and equitable actions are maintained in one suit, each retains its own identity as legal or equitable for purposes of the applicable standard of review on appeal." *Corley v. Ott,* 326 S.C. 89, 92 n. 1, 485 S.E.2d 97, 99 n. 1 (1997). The reviewing court should "view the actions separately for the purpose of determining the appropriate standard of review." *Jordan v. Holt,* 362 S.C. 201, 205, 608 S.E.2d 129, 131 (2005). In an action in equity, tried by the judge alone, without a reference, the appellate court has jurisdiction to find facts in accordance with its own view of the preponderance of the evidence. *Townes Assocs., Ltd. v. City of Greenville,* 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976). On the other hand, when reviewing an action at law, on appeal of a case tried without a jury, the appellate court's jurisdiction is limited to the correction of errors at law, and the appellate court will not disturb the judge's findings of fact as long as they are reasonably supported by the evidence. *Epworth Children's Home v. Beasley,* 365 S.C. 157, 164, 616 S.E.2d 710, 714 (2005).

## LAW/ANALYSIS

### I. Statute of Limitations

The Bensons argue the master erred in denying their motion to dismiss based on the statute of limitations. We disagree.

This action is governed by a three-year statute of limitations period. S.C.Code Ann. § 15–3–530 (2005); *see Mazloom v. Mazloom,* 382 S.C. 307, 323, 675 S.E.2d 746, 755 (Ct.App.2009) (citing three-year statute of limitations in breach of fiduciary duty action); *Turner v. Milliman,* 381 S.C. 101, 109–10, 671 S.E.2d 636, 640 (Ct.App.2009) (applying three-year statute of limitations in fraud action).

The discovery rule applies to this action. *See* S.C.Code Ann. § 15–3–535 (2005) (applying the discovery rule to causes of action arising under section 15–3–530(5)); *Rumpf*

*v. Massachusetts Mut. Life Ins. Co.,* 357 S.C. 386, 394, 593 S.E.2d 183, 187 (Ct.App.2004) (stating "[i]n determining when a cause of action arose under section 15–3–530, we apply the 'discovery rule' "). According to the discovery rule, the statute of limitations begins to run when a person could or should have known, through the exercise of reasonable diligence that a cause of action might exist. *Abba Equip., Inc. v. Thomason,* 335 S.C. 477, 485, 517 S.E.2d 235, 239 (Ct.App.1999). The date on which discovery of the cause of action should have been made is an objective question. *Joubert v. S.C. Dep't of Soc. Servs.,* 341 S.C. 176, 191, 534 S.E.2d 1, 9 (Ct.App.2000). In *Young v. South Carolina Department of Corrections,* this court stated:

> In other words, whether the particular plaintiff actually knew he had a claim is not the test. Rather, courts must decide whether the circumstances of the case would put a person of common knowledge and experience on notice that some right of his has been invaded, or that some claim against another party might exist.

333 S.C. 714, 719, 511 S.E.2d 413, 416 (Ct.App.1999).

The property transfer in this case was made on March 9, 2001. The action was not filed until October 2006. Moore testified he first became aware that something was amiss on December 25, 2005. When he was riding with the Bensons to Christmas dinner at his son Robert's house, Thomas asked who had permitted someone to park a truck on the subject property. Moore testified he had concern about why Thomas was asking about his property.

Moore's son, James Luther Moore, Jr., testified Moore rode home with him from the Christmas dinner and Moore stated he heard Jeannette tell Thomas to "be quiet" when Thomas asked about the vehicle parked on the property. Moore allegedly explained to James that Thomas and Jeannette acted like the property belonged to them. According to James, Moore was also concerned that Thomas was picking up bottles and cans on the property and Moore wanted James's son, Marcus, to check on it.

Marcus testified Moore and his father asked him to look into Moore's affairs a week or so after Christmas 2005. He found the property was titled to the Bensons. He later took

Moore to the bank and received the bank records from 2000 to at least 2005. He explained the withdrawal of retirement funds to Moore, who denied withdrawing any money. Marcus also took Moore to Heckman's office to get copies of the closing documents on the property.

In this case, we look to when a person of common knowledge and experience under the circumstances of the case would have known that he sold his property to the Bensons. In light of the evidence that Jeannette handled Moore's personal affairs, we affirm the master's finding that the statute of limitations did not begin to run until Moore first had suspicions that something was amiss in December 2005.

## II. Conversion

The Bensons argue the master erred in finding Jeannette converted Moore's retirement funds. We disagree.

" 'Conversion' is defined as the unauthorized assumption and exercise of the rights of ownership over goods or personal chattels belonging to another, to the alteration of their condition or to the exclusion of the rights of the owner." *Mullis v. Trident Emergency Physicians,* 351 S.C. 503, 506–07, 570 S.E.2d 549, 550–51 (Ct.App.2002). An action for conversion is an action at law. *Blackwell v. Blackwell,* 289 S.C. 470, 471, 346 S.E.2d 731, 732 (Ct.App.1986). Therefore, we review the record to determine if any evidence supports the master's finding. *See id.* (finding in an action for conversion where the appeal is based on alleged errors of fact, this court must affirm if there is any evidence reasonably supporting the findings of the trial court).

Moore presented evidence his retirement account was closed in January 1999, and the retirement funds were deposited into Jeannette's account. Moore testified he did not give the retirement funds to Jeannette. During direct examination, Moore was asked: "Did you give that money to anybody? Did you make a gift of that retirement money to anybody?" Moore responded: "No." We find evidence to support the master's finding of conversion.

### III. Breach of Fiduciary Duty

The Bensons next argue the master erred in finding Jeannette breached her fiduciary duty to Moore. We disagree.

Our supreme court recently held that an action alleging a breach of fiduciary duty is an action at law but "may sound in equity if the relief sought is equitable." *Verenes v. Alvanos*, 387 S.C. 11, 17, 690 S.E.2d 771, 773 (2010). The "[c]haracterization of an action as equitable or legal depends on the appellant's 'main purpose' in bringing the action.'" *Id.* at 16, 690 S.E.2d at 773 (quoting *Ins. Fin. Servs., Inc. v. S.C. Ins. Co.*, 271 S.C. 289, 293, 247 S.E.2d 315, 318 (1978)). We find the main purpose of the breach of fiduciary duty action in this case was for the equitable remedy to rescind the contract and reconvey the property to Moore. *See Dixon v. Dixon*, 362 S.C. 388, 395, 608 S.E.2d 849, 852 (2005) (finding action to rescind contract and set aside deed is in equity). Thus, we may find facts in accordance with our own view of the preponderance of the evidence. *See Felts v. Richland County*, 303 S.C. 354, 356, 400 S.E.2d 781, 782 (1991) (stating appellate court may find facts in accordance with its own view of the preponderance of the evidence in equitable actions).

"A fiduciary relationship exists when one reposes special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing confidence." *O'Shea v. Lesser*, 308 S.C. 10, 15, 416 S.E.2d 629, 631 (1992). "One standing in a fiduciary relationship with another is subject to liability to the other for harm resulting from a breach of duty imposed by the relation." *Moore v. Moore*, 360 S.C. 241, 253, 599 S.E.2d 467, 473 (Ct.App.2004); *see In re Estate of Cumbee*, 333 S.C. 664, 672, 511 S.E.2d 390, 394 (Ct.App.1999) (finding fiduciary relationship existed where a son had his mother's power of attorney and managed her finances).

Like the master, we find the timing of the withdrawal to Jeannette on March 8, 2001, of all funds in account # 471, indicated the funds originally belonging to Moore were used by the Bensons as part of the purchase price of the property. The master further found Jeannette:

concocted a scheme whereby the [Bensons] could purchase property of James Moore for $56,294.41, which is approximately 37% of the value of the subject property.... In addition, the purchase price paid was funded partially from the funds that belonged to [Moore]. The [Bensons] through their intentional actions and representations made to [Moore] concealed the truth of the transaction from [Moore].

The master found Jeannette breached her fiduciary duty to Moore. After our own review of the record, we likewise find Jeannette breached her fiduciary duty owed to Moore and affirm the master's order directing the Bensons to reconvey the property to Moore.

### IV. Property Taxes and Insurance

The Bensons argue the master erred in awarding damages by failing to credit them for property taxes and insurance payments they allegedly made. We find no error.

Although Moore did not dispute the allegations and testimony that the Bensons paid these items, the Bensons provided no documentary evidence in support of their claims. The master, as the fact finder, was free to accept or reject the testimony. *See S.C. Dep't of Transp. v. M & T Enters. of Mt. Pleasant, LLC,* 379 S.C. 645, 668 n. 12, 667 S.E.2d 7, 20 n. 12 (Ct.App.2008) (finding the master in equity, as the trier of fact, is free to accept or reject all of a witness's testimony). We find no error by the master.

### V. Award of Damages to Moore

The Bensons argue the master erred in finding Moore was entitled to damages because the master failed to consider the equitable distribution award and the outstanding mortgage on the property, paid on Moore's behalf from the proceeds of the sale. We agree.

The Settlement Statement showed that from the proceeds of the sale of the property, Allean Moore was paid $52,851 and a mortgage on the property of $3,024.36 was paid in full, totaling $55,875.36. The master found Moore was entitled to damages of $3,770.26 by subtracting the Bensons' contribution to the sales proceeds, $26,568.09, from the

amount in account # 471 at the time of the closing, $30,338.35. However, this fails to take into account Moore's debts of $55,875.36, which were paid off at the closing. From this, we find Moore is entitled to a credit for his retirement funds of $30,338.35, but must repay the Bensons for their contribution to the payment of his debts of $25,537.01.[3]

## VI. Punitive Damages

The Bensons argue the master erred in awarding punitive damages because there were no actual damages. We agree.

Punitive damages may only be awarded upon an underlying finding of actual damages. *Keane v. Lowcountry Pediatrics*, 372 S.C. 136, 148, 641 S.E.2d 53, 60 (Ct.App.2007). In *Keane*, this court reversed the actual damages award, on which an award of punitive damages was based. *Id.* at 149, 641 S.E.2d at 60. Thus, this court likewise reversed the punitive damages stating "without a finding of actual damages . . . the award of punitive damages is reversed." *Id.*

In this case, the master's award of actual damages failed to take into account debts paid on Moore's behalf. As the final calculation of damages requires Moore to reimburse the Bensons in the amount of $25,537.01, we find no actual damages due to Moore, and reverse the award of punitive damages pursuant to *Keane*.

## CONCLUSION

For the foregoing reasons, we affirm in part, reverse in part, and remand for entry of judgment in accordance with this opinion.

---

3. Moore argues this issue is not preserved for appellate review. The HUD–1 Settlement Statement, which included information regarding the equitable distribution award and outstanding mortgage, was introduced into evidence and considered by the master. The master also ordered a credit against Moore's award. We find this issue was before the court and preserved for our review. *See Spence v. Wingate*, 381 S.C. 487, 489–90, 674 S.E.2d 169, 169 (2009) (finding an issue preserved despite the failure to file a Rule 59(e), SCRCP, motion where the issue was raised to and ruled upon by the trial court).

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

SHORT, HUFF, and WILLIAMS, JJ., concur.